FILED

2005 Dec-08 PM 03:08
U.S. DISTRICT COURT
N.D. OF ALABAMA

DTF GJ#5

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No.      2:05-CR-00061-RBP-TMP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | VIOLATIONS: |
| | ) | |
| JEWELL C. "CHRIS" McNAIR, | ) | 18 U.S.C. § 666, Bribery Concerning |
| JACK W. SWANN, | ) | Programs Receiving Federal Funds; |
| RONALD K. WILSON, | ) | 18 U.S.C. § 371, Conspiracy; |
| CLARENCE R. BARBER, | ) | 18 U.S.C. § 1341, Mail Fraud; |
| GRADY R. "ROLAND" PUGH, | ) | 18 U.S.C. § 1503, Obstruction; and |
| JOSEPH E. "EDDIE" YESSICK, | ) | 18 U.S.C. § 2, Aiding and Abetting. |
| ROLAND PUGH CONSTRUCTION, INC., | ) | |
| BOBBY J. RAST, | ) | |
| DANIEL B. "DANNY" RAST, | ) | |
| RAST CONSTRUCTION, INC., | ) | |
| SOHAN P. SINGH, | ) | |
| EDWARD T. KEY, Jr., | ) | |
| US INFRASTRUCTURE, INC., | ) | |
| FLOYD W. "PAT" DOUGHERTY, | ) | |
| F.W. DOUGHERTY ENGINEERING | ) | |
| & ASSOCIATES, INC., and | ) | |
| CIVIL ENGINEERING | ) | |
| DESIGN SERVICES, INC. | ) | |
| | ) | |
| Defendants. | ) | |

## SECOND SUPERSEDING INDICTMENT

### INTRODUCTION

**The Grand Jury Charges, as to These Defendants:**

At all times relevant to this Indictment, unless otherwise stated:

### THE GOVERNMENT OF JEFFERSON COUNTY

1.    Jefferson County, Alabama, ("Jefferson County") was a county within the Northern

District of Alabama with an elected County Commission as its governing body.  Among

the powers of Jefferson County was the ability to negotiate and enter into contracts for

sewer construction and emergency sewer repairs.  Jefferson County received more than $10,000 in assistance from the United States government each year relevant to this indictment.

2.     The Jefferson County Commission was an elected body composed of five commissioners.  One commissioner had oversight for the operation of the Jefferson County Environmental Services Department ("JCESD").

THE JEFFERSON COUNTY ENVIRONMENTAL SERVICES DEPARTMENT

3.     In or about 1994, the United States Department of Justice filed suit against Jefferson County and the Jefferson County Commission, alleging violations of the Clean Water Act.

4.     In or about 1996, Jefferson County and the Jefferson County Commission entered into a consent decree with the U.S. Environmental Protection Agency ("EPA") under which Jefferson County agreed to repair its sewer system in order to comply with the Clean Water Act.

5.     Between 1996 and the end of 2003, the Jefferson County Environmental Services Department ("JCESD"), a department of Jefferson County, supervised the process of repairing and rehabilitating the sewer system in Jefferson County and bringing the wastewater system into compliance with the Clean Water Act.

6.     The JCESD Product Review Committee was a group of engineers and sewer technicians that decided which sewer pipe-lining products would qualify as acceptable for use in Jefferson County.  During the time period relevant to this indictment, the Product Review Committee approved the pipe-lining products for the companies who could then have those products included in bids on sewer rehabilitation work in Jefferson County.

2

7.      Between 1996 and 2003, Jefferson County awarded over a billion dollars

($1,000,000,000) worth of engineering and construction contracts in order to comply

with the consent decree.

DEFENDANTS

8.      Defendant JEWELL C. "CHRIS" McNAIR was elected as a member of the Jefferson

County Commission, was employed by Jefferson County, and had oversight of the

JCESD.  During the time period relevant to this Indictment, Defendant McNair was the

majority owner of McNair Frame & Photo Art, Inc. ("McNair Studio").

9.      Defendant JACK W. SWANN was employed by Jefferson County as the Director of the

JCESD.

10.     Defendant RONALD K. WILSON was employed by Jefferson County as the Chief Civil

Engineer of the JCESD and served on the Product Review Committee.

11.     Defendant CLARENCE R. BARBER was employed by Jefferson County as the

Construction and Maintenance Supervisor for the JCESD.

12.     Defendant GRADY R. "ROLAND" PUGH was the Chairman of the Board and seventy

per cent owner of Roland Pugh Construction, Inc. ("PUGH, INC.") from at least 1998

until the time of indictment.

13.     Defendant JOSEPH E. "EDDIE" YESSICK was the President and ten per cent owner of

Roland Pugh Construction, Inc. ("PUGH, INC.") from at least 1998 until the time of

indictment.

14.     Defendant ROLAND PUGH CONSTRUCTION, INC. ("PUGH, INC.") was an Alabama

corporation that, along with its joint venture partner, performed at least $200 million

worth of sewer construction contracts for Jefferson County and the JCESD between 1997

3

and the end of 2003. During this time period, the majority of PUGH, INC.'s work was for the JCESD.

15. Defendant BOBBY J. RAST was the President and 41.5 per cent owner of Rast Construction, Inc. ("RAST, INC.").

16. Defendant DANIEL B. "DANNY" RAST was the Executive Vice President and 41.5 per cent owner of Rast Construction, Inc. ("RAST, INC.").

17. Defendant RAST CONSTRUCTION, INC. ("RAST, INC.") was an Alabama corporation that, along with its joint venture partner, performed at least $200 million worth of sewer construction contracts for Jefferson County and the JCESD between 1997 and the end of 2003. During this time period, the majority of RAST, INC.'s work was for the JCESD.

18. Defendant SOHAN P. SINGH was the President of US INFRASTRUCTURE, INC. ("USI").

19. Defendant EDWARD T. KEY, Jr. was the Vice President of US INFRASTRUCTURE, INC. ("USI").

20. Defendant US INFRASTRUCTURE, INC. ("USI") was an Alabama corporation that received approximately $50 million worth of "no bid" engineering contracts for Jefferson County and the JCESD between 1997 and the end of 2003. During this time period, the majority of USI's work was for the JCESD.

21. Defendant FLOYD W. "PAT" DOUGHERTY ("DOUGHERTY") was the President and fifty per cent owner of F.W. Dougherty Engineering & Associates, Inc. ("FWDE, INC.").

22. Defendant F.W. DOUGHERTY ENGINEERING & ASSOCIATES, INC. ("FWDE, INC.") was an Alabama corporation that received at least $30 million worth of "no bid"

4

engineering contracts for Jefferson County and the JCESD between 1997 and the end of 2003. During this time period, the majority of FWDE's work was for the JCESD.

23.    Defendant CIVIL ENGINEERING DESIGN SERVICES, INC. ("CEDS, INC.") was an Alabama corporation formed on October 6, 1999, by Ronald K. Wilson to provide engineering services. CEDS, INC. changed its name to R.K. Wilson & Associates, Inc. on April 22, 2003. Between October 1999 and the end of 2003, the majority of CED, INC.'s work was for the JCESD.

CO-CONSPIRATORS

24.    Harry T. Chandler was employed by Jefferson County as the Assistant Director of the JCESD.

25.    Donald R. Ellis was an engineer with the JCESD and the Chairman of the Product Review Committee.

26.    Larry P. Creel was employed by Jefferson County as a Maintenance Supervisor for the JCESD and served on the Product Review Committee.

27.    Grady R. Pugh, Jr. was the Chief Executive Officer and ten per cent owner of Defendant Roland Pugh Construction, Inc. ("PUGH, INC.") from at least 1998 until the time of indictment.

28.    William H. Dawson was the owner of Dawson Engineering, Inc., an Alabama corporation that received at least $20 million worth of "no bid" engineering contracts from Jefferson County and the JCESD between 1997 and the end of 2003. During this time period, the majority of Dawson's work was for the JCESD.

5

## COUNT ONE

### (18 U.S.C. § 371 - Conspiracy to Commit Bribery)

<u>THE CONSPIRACY</u>

1.   The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.   JEWELL C. "CHRIS" McNAIR; GRADY R. "ROLAND" PUGH; JOSEPH E. "EDDIE" YESSICK; ROLAND PUGH CONSTRUCTION, INC. ("PUGH, INC."); BOBBY J. RAST; DANIEL B. "DANNY" RAST; RAST CONSTRUCTION, INC. ("RAST, INC."); FLOYD W. "PAT" DOUGHERTY; and F.W. DOUGHERTY ENGINEERING & ASSOCIATES, INC. ("FWDE, INC.") are hereby named as DEFENDANTS in this count.

3.   From in or about August 1999, and continuing at least through January 2002, the exact dates being unknown to the Grand Jury, within the Northern District of Alabama and elsewhere, Defendants McNAIR; ROLAND PUGH; YESSICK; PUGH, INC.; BOBBY RAST; DANNY RAST; RAST, INC.; DOUGHERTY; FWDE, INC.; and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, and agree with each other and others, both known and unknown to the Grand Jury, to commit offenses against the United States, to wit:

   (a) to corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of county government, which county government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, and series of transactions of such

6

county government involving anything of value of $5,000 or more, in violation of Title 18 United States Code, Section 666(a)(2); and

(b) being an agent of the county government, which county government received federal assistance in excess of $10,000 in a one-year period, to corruptly solicit and demand for the benefit of any person, and accept and agree to accept, anything of value from any person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of such county government involving anything of value of $5,000 or more, in violation of Title 18, United States Code, Section 666(a)(1)(B).

<u>THE OBJECTS OF THE CONSPIRACY</u>

4.    It was an object of the conspiracy for Defendant McNAIR, the Jefferson County Commissioner responsible for the JCESD, to enrich himself by corruptly soliciting and accepting things of value with the intent of being influenced and rewarded for supporting the interests of Defendants ROLAND PUGH; YESSICK; PUGH, INC.; BOBBY RAST; DANNY RAST; RAST, INC.; DOUGHERTY; and FWDE, INC., in connection with the JCESD sewer construction contracting program.

5.    It was further an object of the conspiracy for Defendants ROLAND PUGH; YESSICK; PUGH, INC.; BOBBY RAST; DANNY RAST; RAST, INC.; DOUGHERTY; FWDE, INC.; and others known and unknown to the Grand Jury, aided and abetted by each other, to corruptly give, offer, and agree to give things of value to Defendant McNAIR with the intent of influencing Jefferson County and the JCESD and rewarding McNair for his supporting their interests in connection with the JCESD sewer construction contracting program.

7

<u>MANNER AND MEANS OF THE CONSPIRACY</u>

6.     It was part of the conspiracy that Defendant McNAIR, while he was the Jefferson County

Commissioner responsible for the JCESD, would and did corruptly solicit and accept:

construction, remodeling, and cash totaling at approximately $225,000 for McNair Frame

& Photo Art, Inc. at 45 6th Avenue South, Birmingham, Alabama ("McNair Studio");

from Defendants ROLAND PUGH; YESSICK; PUGH, INC.; BOBBY RAST; DANNY

RAST; RAST, INC.; DOUGHERTY; and FWDE, INC., among others, who were

contractors and engineers that performed work for the JCESD.

7.     It was part of the conspiracy that Defendants  ROLAND PUGH; YESSICK; PUGH, INC.;

BOBBY RAST; DANNY RAST; RAST, INC.; DOUGHERTY; and FWDE, INC., would

and did corruptly offer, give, and agree to give:  construction and remodeling, at McNair

Frame & Photo Art, Inc. at 45 6th Avenue South, Birmingham, Alabama ("McNair

Studio"); cash; and payments to George Word Construction for a retirement home in

Fordyce, Arkansas, with a total value of approximately $320,000 to Jewell C. "Chris"

McNair.

8.     It was further part of the conspiracy that Defendant McNAIR would and did corruptly

provide influence and favorable treatment to Defendants ROLAND PUGH; YESSICK;

PUGH, INC.; BOBBY RAST; DANNY RAST; RAST, INC.; DOUGHERTY; and

FWDE, INC., among others, in conjunction with Jefferson County and contracting on

JCESD matters in exchange for the many bribes paid by these defendants.

OVERT ACTS

1.      In August 1999, the exact dates being unknown to the Grand Jury, Defendant YESSICK caused agents of Defendant PUGH, INC. to pour concrete for, and form the foundation and walls of the basement of McNair Frame & Photo Art, Inc., located at 45 6th Avenue South in Birmingham, Alabama, ("McNair Studio") at a cost of approximately $11,709 for the benefit of Defendant McNAIR.

2.      On or about October 1999, the exact dates being unknown to the Grand Jury, Defendant DOUGHERTY caused agents of FWDE, INC. to work with Defendant McNAIR in reviewing the plans and designs for construction of improvements at McNair Studio.

3.      Between October 1999 and January 2002, the exact dates being unknown to the Grand Jury, Defendant DOUGHERTY caused Bill Bailey, an employee of FWDE, INC., to work as a supervisor of construction at McNair Studio at a cost of approximately $62,707 and for the benefit of Defendant McNAIR.

4.      In or about December 1999, the exact dates being unknown to the Grand Jury, Defendant ROLAND PUGH, caused Defendant PUGH, INC., to deliver an envelope containing cash to Defendant McNAIR.

5.      On or about May 24, 2000, Defendant ROLAND PUGH instructed Grady Pugh to fly an airplane owned by Defendant PUGH, INC. to LaGrange, Georgia, to buy carpet and flooring material for the benefit of Defendant McNAIR.

6.      On or about May 24, 2000, Defendant ROLAND PUGH caused Grady Pugh to pay $4,820 to The Mill Store, Inc. for carpet and tile for installation at McNair Studio for the benefit of Defendant McNAIR.

7.  In or about July 2000, the exact dates being unknown to the Grand Jury, Defendant ROLAND PUGH, caused agents of Defendant PUGH, INC., including Defendant YESSICK, to contribute a total of approximately $20,000 into an envelope intended to be given to Defendant McNAIR.

8.  In or about July 2000, the exact dates being unknown to the Grand Jury, Defendant ROLAND PUGH caused Grady Pugh to deliver the envelope of cash to Defendant McNAIR.

9.  On or about July 28, 2000, Defendants BOBBY RAST and DANNY RAST caused Defendant RAST, INC. to pay $2,100 to Barry Mosley for carpentry work at McNair Studio for the benefit of Defendant McNAIR.

10. On or about August 4, 2000, Defendants BOBBY RAST and DANNY RAST caused Defendant RAST, INC. to pay $1,400 to Barry Mosley for carpentry work at McNair Studio for the benefit of Defendant McNAIR.

11. On or about August 11, 2000, Defendants BOBBY RAST and DANNY RAST caused Defendant RAST, INC. to pay $2,100 to Barry Mosley for carpentry work at McNair Studio for the benefit of Defendant McNAIR.

12. On or about August 18, 2000, Defendants BOBBY RAST and DANNY RAST caused Defendant RAST, INC. to pay $2,450 to Barry Mosley for carpentry work at McNair Studio for the benefit of Defendant McNAIR.

13. On or about August 25, 2000, Defendants BOBBY RAST and DANNY RAST caused Defendant RAST, INC. to pay $2,500 to Barry Mosley for carpentry work at McNair Studio for the benefit of Defendant McNAIR.

14.     On or about September 1, 2000, Defendants BOBBY RAST and DANNY RAST caused Defendant RAST, INC. to pay $3,000 to Barry Mosley for carpentry work at McNair Studio for the benefit of Defendant McNAIR.

15.     On or about September 8, 2000, Defendants BOBBY RAST and DANNY RAST caused Defendant RAST, INC. to pay $3,975 to Barry Mosley for carpentry work at McNair Studio for the benefit of Defendant McNAIR.

16.     On or about September 12, 2000, Defendant DANNY RAST caused Defendant RAST, INC. to pay Master Access Controls, Inc. $2,933 for an automatic security gate at McNair Studio for the benefit of Defendant McNAIR.

17.     On or about September 15, 2000, Defendants BOBBY RAST and DANNY RAST caused Defendant RAST, INC. to pay $3,125 to Barry Mosley for carpentry work at McNair Studio for the benefit of Defendant McNAIR.

18.     On or about September 22, 2000, Defendants BOBBY RAST and DANNY RAST caused Defendant RAST, INC. to pay $3,435 to Barry Mosley for carpentry work at McNair Studio for the benefit of Defendant McNAIR.

19.     On or about September 29, 2000, Defendants BOBBY RAST and DANNY RAST caused Defendant RAST, INC. to pay $3,660 to Barry Mosley for carpentry work at McNair Studio for the benefit of Defendant McNAIR.

20.     On or about October 6, 2000, Defendants BOBBY RAST and DANNY RAST caused Defendant RAST, INC. to pay $3,125 to Barry Mosley for carpentry work at McNair Studio for the benefit of Defendant McNAIR.

21.   On or about October 6, 2000, Defendant BOBBY RAST caused agents of Defendant
      RAST, INC. to pay $1,880 to Clint Gilley for carpet installation at McNair Studio for the
      benefit of Defendant McNAIR.

22.   On or about October 13, 2000, Defendants BOBBY RAST and DANNY RAST caused
      Defendant RAST, INC. to pay $3,600 to Barry Mosley for carpentry work at McNair
      Studio for the benefit of Defendant McNAIR.

23.   On or about October 16, 2000, agents for Defendant PUGH, INC. purchased custom hand
      railings from Thompson Fabricating LLC at a cost of $5,500 for installation at McNair
      Studio for the benefit of Defendant McNAIR.

24.   On or about October 18, 2000, Defendant DANNY RAST caused Defendant RAST, INC.
      to pay Master Access Controls, Inc. $2,933 for an automatic security gate at McNair
      Studio for the benefit of Defendant McNAIR.

25.   On or about October 20, 2000, Defendant BOBBY RAST caused agents of Defendant
      RAST, INC. to pay $3,421 to Clint Gilley for carpet installation at McNair Studio for the
      benefit of Defendant McNAIR.

26.   On or about October 20, 2000, Defendants BOBBY RAST and DANNY RAST caused
      Defendant RAST, INC. to pay $3,200 to Barry Mosley for carpentry work at McNair
      Studio for the benefit of Defendant McNAIR.

27.   On or about October 27, 2000, Defendants BOBBY RAST and DANNY RAST caused
      Defendant RAST, INC. to pay $3,100 to Barry Mosley for carpentry work at McNair
      Studio for the benefit of Defendant McNAIR.

28.     On or about November 3, 2000, Defendants BOBBY RAST and DANNY RAST caused
        Defendant RAST, INC. to pay $2,010 to Barry Mosley for carpentry work at McNair
        Studio for the benefit of Defendant McNAIR.

29.     On or about November 11, 2000, Defendants BOBBY RAST and DANNY RAST caused
        Defendant RAST, INC. to pay $3,525 to Barry Mosley for carpentry work at McNair
        Studio for the benefit of Defendant McNAIR.

30.     On or about November 16, 2000, William H. Dawson paid $16,400 to Holt Audio Visual
        for a projector system that was installed at McNair Studio for the benefit of Defendant
        McNAIR.

31.     On or about November 17, 2000, Defendants BOBBY RAST and DANNY RAST caused
        Defendant RAST, INC. to pay $3,185 to Barry Mosley for carpentry work at McNair
        Studio for the benefit of Defendant McNAIR.

32.     On or about December 1, 2000, Defendants BOBBY RAST and DANNY RAST caused
        Defendant RAST, INC. to pay $1,125 to Barry Mosley for carpentry work at McNair
        Studio for the benefit of Defendant McNAIR.

33.     On or about December 5, 2000, Defendant DANNY RAST caused Defendant RAST,
        INC. to pay $5,500 to Bailey and Sons for landscaping work at McNair Studio for the
        benefit of Defendant McNAIR.

34.     On or about December 8, 2000, Defendants BOBBY RAST and DANNY RAST caused
        Defendant RAST, INC. to pay $1,200 to Barry Mosley for carpentry work at McNair
        Studio for the benefit of Defendant McNAIR.

35.     On or about December 22, 2000, Defendants BOBBY RAST and DANNY RAST caused

Defendant RAST, INC. to pay $1,050 to Barry Mosley for carpentry work at McNair

Studio for the benefit of Defendant McNAIR.

36.     In or about January 2001, the exact dates being unknown to the Grand Jury, Defendant

ROLAND PUGH caused Grady Pugh to deliver an envelope, on behalf of Defendant

PUGH, INC., containing at least $10,000 in cash, to Defendant McNAIR.

37.     On or about January 2001, the exact dates being unknown to the Grand Jury, Defendants

BOBBY RAST and DANNY RAST caused agents of Defendant RAST, INC. to fabricate

and install stairs, at a cost of several thousand dollars, for the back entrance to McNair

Studio for the benefit of Defendant McNAIR.

38.     On or about January 2001, the exact dates being unknown to the Grand Jury, Defendants

BOBBY RAST and DANNY RAST caused agents of Defendant RAST, INC. to fabricate

and install an elevated concrete deck, at a cost of several thousand dollars, at McNair

Studio for the benefit of Defendant McNAIR.

39.     On or about March 13, 2001, agents for Defendant PUGH, INC. purchased additional

custom hand railings from Thompson Fabricating LLC at a cost of $11,700 for installation

at McNair Studio for the benefit of Defendant McNAIR.

40.     On or about May 14, 2001, Defendant YESSICK caused Defendant PUGH, INC. to pay

$5,000 to McNAIR.

41.     On or about May 15, 2001, Defendant BOBBY RAST paid $5,000 to McNAIR.

42.     On or about May 14, 2001, Defendant DOUGHERTY caused Defendant FWDE, INC. to

pay $5,000 to McNAIR.

43.     On or about June 27, 2001, the exact date being unknown to the Grand Jury, Defendant
        BOBBY RAST caused Adventure Travel to book an Alaska Cruise at a cost of $8,135 for
        the benefit of McNAIR.

44.     On or about July 2, 2001, Defendant BOBBY RAST caused Defendant RAST, INC. to
        pay a total of $8,135 for an Alaskan cruise aboard the Dawn Princess for the benefit of
        McNAIR.

45.     On or about July 24, 2001, Defendant YESSICK flew to Camden, Arkansas to meet with
        an agent of George Word Construction, about building a lake house for the benefit of
        McNAIR.

46.     On or about October 1, 2001, Defendant ROLAND PUGH caused Defendant YESSICK
        to issue a check from Defendant PUGH, INC. to George Word Construction in the amount
        of $34,150 for the benefit of McNAIR.

47.     On or about October 12, 2001, Defendant ROLAND PUGH caused Defendant YESSICK
        to issue a check from Defendant PUGH, INC. to George Word Construction in the amount
        of $10,042 for the benefit of McNAIR.

48.     On or about October 25, 2001, Defendant DOUGHERTY met with Defendant McNAIR at
        the offices of FWDE, INC. to discuss payment of money to George Word Construction for
        the benefit of McNAIR.

49.     On or about October 25, 2001, Defendant DOUGHERTY caused Defendant FWDE, INC.
        to issue a check in the amount of $50,000 to George Word Construction for the benefit of
        McNAIR.

50.     On or about November 2001, the exact dates being unknown to the Grand Jury, Defendant
        RAST, INC. caused its agents and employees to pour a concrete slab and install plumbing

for a guard shack at McNair Studio, at a cost of several thousand dollars, for the benefit of McNAIR.

51.     On or about November 26, 2001, Defendant BOBBY RAST caused an agent of Defendant RAST, INC. to pay $1,775 to Buchanan Plumbing for work at McNair Studio for the benefit of McNAIR.

52.     Beginning on or about December of 2001 and continuing into January 2002, the exact dates being unknown to the Grand Jury, Defendant DOUGHERTY caused agents of Defendant FWDE, INC. to work approximately four weeks building a two-story guard shack at McNair Studio at a cost of approximately $3,280 for the benefit of McNAIR.

53.     On or about January 11, 2002, Defendants BOBBY RAST and DANNY RAST caused Defendant RAST, INC. to pay $3,200 to Barry Mosley for construction work on the guard shack at McNair Studio for the benefit of McNAIR.

54.     On or about January 17, 2002, Defendants BOBBY RAST and DANNY RAST caused Defendant RAST, INC. to pay $4,000 to Barry Mosley for construction work on the guard shack at McNair Studio for the benefit of McNAIR.

**All in violation of Title 18 U.S.C. Section 371.**

**COUNTS TWO to TWELVE**

**(18 U.S.C. § 666 – Bribery)**

1.     The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.     JEWELL C. "CHRIS" McNAIR is hereby named as DEFENDANT in these counts.

3.     From at least July 2000 and continuing at least through March 2001, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere,

16

Defendant JEWELL C. "CHRIS" McNAIR being an agent of the county government, which county government received federal assistance in excess of $10,000 in a one-year period, did corruptly solicit and demand for the benefit of any person, and accept and agree to accept, anything of value from any person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of such government involving anything of value of $5,000 or more, to wit: Defendant McNAIR, being an employee of Jefferson County, Alabama, corruptly solicited, accepted, and agreed to accept the following:

–From Grady R. "Roland" Pugh; Grady R. Pugh, Jr.;  Joseph E. "Eddie" Yessick; and Roland Pugh Construction, Inc.:

**Count 2:** Hand railings with an approximate value of $5,500;

**Count 3:** Hand railings with an approximate value of $11,700;

**Count 4:** Money totaling at least $30,000;

–From Bobby J. Rast; Daniel B. "Danny" Rast; and Rast Construction, Inc.:

**Count 5:** Construction work and carpentry provided by Barry Mosley with an approximate value of $52,990;

**Count 6:** Installation of a security gate by Master Access Controls with an approximate value of $5,866;

**Count 7:** Installation of carpet by Clint Gilley with an approximate value of $5,300;

**Count 8:** Landscaping work by Bailey and Sons with an approximate value of $5,500;

**Count 9:** Fabrication and construction of a set of stairs with an approximate value of several thousand dollars;

**Count 10:** Construction of a concrete deck with an approximate value of several thousand dollars;

–From Floyd W. "Pat" Dougherty and F.W. Dougherty Engineering & Associates, Inc.:

**Count 11:** Supervision and project management by Bill Bailey with an approximate value of $27,434; and

–From William H. Dawson:

**Count 12:** Installation of an audio visual system worth $16,400,

in each instance intending to be influenced and rewarded in connection with the JCESD sewer construction contracting program.

**Each Count in Violation of Title 18 United States Code, Section 666(a)(1)(B).**

## COUNTS THIRTEEN to EIGHTEEN

### (18 U.S.C. § 666 – Bribery)

1.    The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.    GRADY R. "ROLAND" PUGH; JOSEPH E. "EDDIE" YESSICK;  and ROLAND PUGH CONSTRUCTION, INC. ("PUGH, INC.") are hereby named as DEFENDANTS in these counts.

3.    From at least July 2000 and continuing at least through October 2001, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendants ROLAND PUGH; YESSICK; and PUGH, INC., aided and abetted by each other, did corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of county government, which county

18

government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, or series of transactions of such county government involving anything of value of $5,000 or more, to wit: Defendants ROLAND PUGH, YESSICK and PUGH, INC. corruptly offered, gave, and agreed to give to Jewell C. "Chris" McNair:

**Count 13:** $20,000 in cash, (as to Defendants YESSICK and PUGH, INC. only);

**Count 14:** An envelope of cash containing at least $10,000 in January 2001;

**Count 15:** Installation of hand railings with a total approximate value of $17,200;

**Count 16:** A check for $5,000;

**Count 17:** A check to George Word Construction, Inc. in the amount of $34,140, for the benefit of McNair; and

**Count 18:** A check to George Word Construction, Inc. in the amount of $10,042, for the benefit of McNair,

in each instance with intent to influence and reward an agent of Jefferson County and to be rewarded in connection with the JCESD sewer construction contracting program.

**Each Count in Violation of Title 18 United States Code, Sections 666(a)(2) and 2.**


### COUNT NINETEEN to TWENTY-SEVEN

### (18 U.S.C. § 666 – Bribery)

1.  The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.  BOBBY J. RAST; DANIEL B. "DANNY" RAST; and RAST CONSTRUCTION, INC. ("RAST, INC.") are hereby named as DEFENDANTS in this count.

3.      From at least July 2000 and continuing at least through January 2002, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendants BOBBY RAST; DANNY RAST; and RAST, INC., aided and abetted by each other, did corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of county government, which county government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, or series of transactions of such county government involving anything of value of $5,000 or more, to wit: Defendants BOBBY RAST; DANNY RAST; and RAST, INC. corruptly offered, gave, and agreed to give to Jewell C. "Chris" McNair:

**Count 19:** Construction work and carpentry provided by Barry Mosley with an approximate value of $52,990;

**Count 20:** Installation of a security gate by Master Access Controls with an approximate value of $5,866;

**Count 21:**  Installation of carpet by Clint Gilley with an approximate value of $5,300;

**Count 22:**  Landscaping work by Bailey and Sons with an approximate value of $5,500;

**Count 23:**  Fabrication and construction of a set of stairs with an approximate value of several thousand dollars;

**Count 24:**  Construction of a concrete deck with an approximate value of several thousand dollars;

**Count 25:**  Plumbing work by Buchanan Plumbing with an approximate value of $1,775;

**Count 26:**  A check for $5,000; and

**Count 27:**  An Alaskan Cruise with an approximate value of $8,135,

in each instance intending to influence and reward an agent of Jefferson County and to be rewarded in connection with the JCESD sewer construction contracting program.

**Each Count in Violation of Title 18 United States Code, Sections 666(a)(2) and 2.**


## COUNTS TWENTY-EIGHT to THIRTY-ONE

## (18 U.S.C. § 666 – Bribery)

1.      The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.      FLOYD W. "PAT" DOUGHERTY; and F.W. DOUGHERTY ENGINEERING & ASSOCIATES, INC. ("FWDE, INC.") are hereby named as DEFENDANTS in these counts.

3.      From July 2000 and continuing through January 2002, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendants DOUGHERTY and FWDE, INC., aided and abetted by each other, did corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of county government, which county government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, or series of transactions of such county government involving anything of value of $5,000 or more, to wit: Defendants DOUGHERTY and FWDE, INC. corruptly offered, gave, and agreed to give to Jewell C. "Chris" McNair:

**Count 28:** Supervision and project management by Bill Bailey with an approximate value of $27,434;

**Count 29:**  A check for $5,000;

**Count 30:**  A check to George Word Construction, Inc. for $50,000, for the benefit of McNair; and

**Count 31:**  Construction work on a guard shack at McNair Studio with a value of $3,280, in each instance intending to influence and reward an agent of Jefferson County and to be rewarded in connection with the JCESD sewer construction contracting program.

**Each Count in Violation of Title 18 United States Code, Sections 666(a)(2) and 2.**

**COUNT THIRTY-TWO**

**(18 U.S.C. § 371 - Conspiracy to Commit Bribery)**

<u>THE CONSPIRACY</u>

1.      The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.      JEWELL C. "CHRIS" McNAIR; SOHAN P. SINGH; EDWARD T. KEY, Jr.; and US INFRASTRUCTURE, INC. ("USI") are hereby named as DEFENDANTS in this count.

3.      From in or about February 1999, and continuing at least through February 2002, the exact dates being unknown to the Grand Jury, within the Northern District of Alabama and elsewhere, Defendants McNAIR; SINGH; KEY; and USI did knowingly and willfully combine, conspire, and agree with each other and others, both known and unknown to the Grand Jury, to commit offenses against the United States, to wit:

> (a) to corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of county government, which county government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, and series of transactions of such

22

county government involving anything of value of $5,000 or more, in violation of

Title 18 United States Code, Section 666(a)(2); and

(b) being an agent of the county government, which county government received

federal assistance in excess of $10,000 in a one-year period, to corruptly solicit

and demand for the benefit of any person, and accept and agree to accept, anything

of value from any person, intending to be influenced and rewarded in connection

with any business, transaction, and series of transactions of such county

government involving anything of value of $5,000 or more, in violation of

Title 18, United States Code, Section 666(a)(1)(B).

## THE OBJECTS OF THE CONSPIRACY

4.    It was an object of the conspiracy for Defendant McNAIR, the Jefferson County

Commissioner responsible for the JCESD, to enrich himself by corruptly soliciting and

accepting payments with the intent of being influenced and rewarded for supporting the

interests of Defendants SINGH, KEY, and USI in connection with the JCESD sewer

construction contracting program.

5.    It was further an object of the conspiracy for Defendants SINGH, KEY, and USI, aided

and abetted by each other, to corruptly give, offer, and agree to give payments to

Defendant McNAIR with the intent of influencing Jefferson County and the JCESD and

rewarding McNair for his supporting their interests in connection with the JCESD sewer

construction contracting program.

## MANNER AND MEANS OF THE CONSPIRACY

6.    It was part of the conspiracy that Defendant McNAIR, while he was the Jefferson County

Commissioner responsible for the JCESD, would and did corruptly solicit and accept

23

payments in the amount of approximately $140,000 from Defendants SINGH, KEY, and

USI, for work not actually done by McNAIR or done at inflated prices.

7.      It was part of the conspiracy that Defendants SINGH, KEY, and USI, would and did

corruptly offer, give, and agree to give payments in the amount of approximately

$140,000 to Jewell C. "Chris" McNair.

8.      It was further part of the conspiracy that Defendant McNAIR would and did corruptly

provide influence and favorable treatment to Defendants SINGH, KEY, and USI in

conjunction with Jefferson County and contracting on JCESD matters in exchange for the

many bribes paid by these defendants.

OVERT ACTS

Between February 1999 and February 2002, as indicated below, the exact dates being

unknown to the Grand Jury, Defendant McNAIR invoiced Defendant USI for "Marketing

and Proposal Services", "Marketing Materials" and "Consulting" of various descriptions

for work not actually done or done at inflated prices, in the following amounts:

| Overt Act | Check Date | Amount Paid to McNAIR | Description of Work | Invoice Date By McNAIR |
|---|---|---|---|---|
| 1. | 2/25/99 | $12,595 | Marketing for Atlanta Proposal | 2/25/99 |
| 2. | 4/14/99 | $5,690 | USI Company Logo Development | 4/14/99 |
| 3. | 4/14/99 | $4,589 | Consultation & Qualifications | 4/14/99 |
| 4. | 7/27/99 | $14,315 | Marketing Material | various |
| 5. | 10/5/99 | $2,272 | Letters of Interest & Qualifications | 8/99 |
| 6. | 10/22/99 | $10,279 | Brochure, Letters & Qualifications | 10/18/99 |

| Overt Act | Check Date | Amount Paid to McNAIR | Description of Work | Invoice Date By McNAIR |
|---|---|---|---|---|
| 7. | 11/19/99 | $5,196 | Brochure, Letters & Qualifications | 11/17/99 |
| 8. | 12/3/99 | $6,120 | Brochure, Letters & Qualifications | 12/2/99 |
| 9. | 3/15/00 | $10,616 | Various Services Provided | 3/14/00 |
| 10. | 4/5/00 | $5,390 | Consultation & Letters of Interest | 4/4/00 |
| 11. | 4/19/00 | $5,224 | Consultation & Letters of Interest | 4/18/00 |
| 12. | 5/12/00 | $4,980 | Consultation & Letters of Interest | 5/11/00 |
| 13. | 7/27/00 | $5,570 | Consultation, Layout and Printing | 7/27/00 |
| 14. | 8/17/00 | $2,016 | Letters of Interest | 8/17/00 |
| 15. | 9/20/00 | $4,625 | Letters of Interest | 9/20/00 |
| 16. | 10/25/00 | $5,392 | Letters of Interest & Proposals | 10/25/00 |
| 17. | 12/8/00 | $5,080 | Letter of Interest & Proposals | 12/8/00 |
| 18. | 2/01/01 | $5,010 | Letters of Interest & Proposals | 1/31/01 |
| 19. | 2/21/01 | $2,999 | Letter of Interest & Proposals | 2/21/01 |
| 20. | 4/12/01 | $3,061 | Letters of Interest & Qualifications | 4/11/01 |
| 21. | 6/20/01 | $3,024 | Letters of Interest & Qualifications | 6/12/01 |
| 22. | 8/24/01 | $4,745 | Letters of Interest | 8/24/01 |
| 23. | 10/01 | $3,100 | Invoice 12875 | 10/18/01 |
| 24. | 10/31/01 | $3,194 | Letter of Interest & Proposals | 10/26/01 |
| 25. | 1/14/02 | $2,890 | Proposal Preparation | 12/10/01 |
| 26. | 2/21/02 | $3,140 | Proposal Preparation | 2/21/02 |

**All in violation of Title 18 U.S.C. Section 371.**

## COUNTS THIRTY-THREE to THIRTY-SEVEN

## (18 U.S.C. § 666 – Bribery)

1.    The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.    JEWELL C. "CHRIS" McNAIR is hereby named as DEFENDANT in these counts.

3.    From at least September 2000 and continuing at least through March 2001, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendant JEWELL C. "CHRIS" McNAIR being an agent of the county government, which county government received federal assistance in excess of $10,000 in a one-year period, did corruptly solicit and demand for the benefit of any person, and accept and agree to accept, anything of value from any person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of such government involving anything of value of $5,000 or more, to wit: Defendant McNAIR, being an employee of Jefferson County, Alabama, corruptly solicited, accepted, and agreed to accept the following from Sohan P. Singh, Edward T. Key and USI:

**Count 33:**    Check dated 9/20/00 for $4,625;

**Count 34:**    Check dated 10/25/00 for $5,392 (less $62 for photo processing);

**Count 35:**    Check dated 12/8/00 for $5,080;

**Count 36:**    Check dated 2/01/01 for $5,010; and

**Count 37:**    Check dated 2/21/01 for $2,999 (less $189 for framing),

in each instance intending to be influenced and rewarded in connection with the JCESD sewer construction contracting program.

**Each Count in Violation of Title 18 United States Code, Section 666(a)(1)(B).**

## COUNTS THIRTY-EIGHT to FORTY-NINE

### (18 U.S.C. § 666 – Bribery)

1.      The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.      SOHAN P. SINGH; EDWARD T. KEY; and US INFRASTRUCTURE, INC. ("USI") are hereby named as DEFENDANTS in these counts.

3.      From at least September 2000 and continuing at least through February 2002, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendants SINGH, KEY and USI, aided and abetted by each other, did corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of county government, which county government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, or series of transactions of such county government involving anything of value of $5,000 or more, to wit: Defendants SINGH, KEY and USI corruptly offered, gave, and agreed to give to Jewell C. "Chris" McNair:

**Count 38:**      Check dated 9/20/00 for $4,625;

**Count 39:**      Check dated 10/25/00 for $5,392 (less $62 for photo processing);

**Count 40:**      Check dated 12/8/00 for $5,080;

**Count 41:**      Check dated 2/01/01 for $5,010;

**Count 42:**      Check dated 2/21/01 for $2,999 (less $189 for framing);

**Count 43:**      Check dated in April 2001 for $3,061 (less $12 for photo processing);

**Count 44:**      Check dated 6/20/01 for $3,024 (less $24 for photo processing);

**Count 45:**       Check dated 8/24/01 for $4,745;

**Count 46:**       Check dated in October 2001 for $3,100;

**Count 47:**       Check dated 10/31/01 for $3,194 (less $104 for photo processing);

**Count 48:**       Check dated 1/14/02 for $2,890; and

**Count 49:**       Check dated 2/21/02 for $3,140.

in each instance with intent to influence and reward an agent of Jefferson County and to be rewarded in connection with the JCESD sewer construction contracting program.

**Each Count in Violation of Title 18 United States Code, Sections 666(a)(2) and 2.**

**COUNT FIFTY**

**(18 U.S.C. § 371 - Conspiracy to Commit Bribery)**

<u>THE CONSPIRACY</u>

1.      The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.      JEWELL C. "CHRIS" McNAIR; SOHAN P. SINGH; EDWARD T. KEY, Jr.; and US INFRASTRUCTURE, INC. ("USI") are hereby named as DEFENDANTS in this count.

3.      From in or about November 1999, and continuing at least through March 2001, the exact dates being unknown to the Grand Jury, within the Northern District of Alabama and elsewhere, Defendants McNAIR; SINGH; KEY; USI, and others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, and agree with each other, to commit offenses against the United States, to wit:

                (a) to corruptly give, offer, and agree to give anything of value to any person, with

                intent to influence and reward an agent of county government, which county

28

government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, and series of transactions of such county government involving anything of value of $5,000 or more, in violation of Title 18 United States Code, Section 666(a)(2); and

(b) being an agent of the county government, which county government received federal assistance in excess of $10,000 in a one-year period, to corruptly solicit and demand for the benefit of any person, and accept and agree to accept, anything of value from any person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of such county government involving anything of value of $5,000 or more, in violation of Title 18, United States Code, Section 666(a)(1)(B).

## THE OBJECTS OF THE CONSPIRACY

4.   It was an object of the conspiracy for Defendant McNAIR, the Jefferson County Commissioner responsible for the JCESD, to enrich himself by corruptly soliciting and accepting cash payments with the intent of being influenced and rewarded for supporting the interests of Defendants SINGH, KEY, USI, and others known and unknown to the Grand Jury, in connection with the JCESD sewer construction contracting program.

5.   It was further an object of the conspiracy for Defendants SINGH, KEY, and USI, aided and abetted by each other, to corruptly give, offer, and agree to give cash payments to Defendant McNAIR with the intent of influencing Jefferson County and the JCESD and rewarding McNair for his supporting their interests in connection with the JCESD sewer construction contracting program.

29

MANNER AND MEANS OF THE CONSPIRACY

6.      It was part of the conspiracy that Defendant McNAIR, while he was the Jefferson County
        Commissioner responsible for the JCESD, would and did corruptly solicit and accept cash
        in the amount of approximately $410,000 from Defendants SINGH, KEY, USI, and others
        known and unknown to the Grand Jury.

7.      It was part of the conspiracy that Defendants SINGH, KEY, and USI, would and did
        corruptly offer, give, and agree to give cash in the amount of approximately $335,000 to
        Jewell C. "Chris" McNair.

8.      It was further part of the conspiracy that Defendant McNAIR would and did corruptly
        provide influence and favorable treatment to Defendants SINGH, KEY, USI, and others
        known and unknown to the Grand Jury, in conjunction with Jefferson County and
        contracting on JCESD matters in exchange for the many bribes paid by these defendants.

9.      It was also part of the conspiracy that Defendants SINGH, KEY, and USI concealed the
        existence of these payments to McNAIR by taking three (3) withdrawals of $90,000 each
        from funds of USI and SINGH and transferring that, and other money, through the
        accounts of Defendants SINGH and KEY over to Defendant McNAIR.

10.     It was further part of the conspiracy that on or about the dates listed below, Defendants
        SINGH, KEY, and USI, as part of the effort to conceal the scheme, transferred money
        from and between each other and then delivered cash to Defendant McNAIR, as described
        in the list of Overt Acts below:

| O/As | Date | $ Deposited | USI, SINGH & KEY Cash Withdrawn | McNAIR Cash Depo's |
|------|------|-------------|----------------------------------|---------------------|
| 1. | 9/2/99 | | $4,550 USI check to SINGH, cashed by KEY | |
| 2. | 9/2/99 | | $2,049 USI check to SINGH, cashed by KEY | |
| 3. | 9/3/99 | | | $5,000 McNAIR cash |
| 4. | 9/17/99 | | | $5,000 McNAIR cash |
| 5. | 9/23/99 | | $4,482 USI check, cashed by Key | |
| 6. | 10/1/99 | | $7,360 USI check to SINGH, cashed by KEY | |
| 7. | 10/7/99 | | | $2,500 McNAIR cash |
| 8. | 10/18/99 | | | $4,000 McNAIR cash |
| 9. | 10/22/99 | | $5,000 KEY cash (from a $9,000 SINGH check) | |
| 10. | 10/22/99 | | $4,000 USI check to A.Singh cashed by KEY | |
| 11. | 11/1/99 | | | $8,100 McNAIR cash |
| 12. | 11/4/99 | | $6,584 USI check to SINGH, cashed by KEY | |
| 13. | 11/5/99 | | | $6,000 McNAIR cash |
| 14. | 11/17/99 | | $9,000 USI check to SINGH, cashed by KEY | |
| 15. | 11/18/99 | | $9,000 USI check to SINGH, cashed by KEY | |
| 16. | 11/19/99 | | | $9,000 McNAIR cash |
| 17. | 11/19/99 | | | $8,000 McNAIR cash |
| 18. | 11/30/99 | | | $5,500 McNAIR cash |
| 19. | 12/2/99 | | $9,000 USI check to  SINGH, cashed by KEY | |
| 20. | 12/2/99 | | | $9,000 McNAIR cash |
| 21. | 12/3/99 | | | $7,000 McNAIR cash |
| 22. | 12/8/99 | | | $5,000 McNAIR cash |
| 23. | 12/14/99 | | | $4,000 McNAIR cash |
| 24. | 12/20/99 | | | $3,600 McNAIR cash |
| 25. | 12/21/99 | | | $6,000 McNAIR cash |
| 26. | 12/27/99 | | | $6,000 McNAIR cash |
| 27. | 1/5/00 | | $6,308 USI check to SINGH, cashed by KEY | |

| O/As | Date | $ Deposited | USI, SINGH & KEY Cash Withdrawn | McNAIR Cash Depo's |
|------|------|-------------|--------------------------------|--------------------|
| 28. | 1/5/00 | | $9,000 SINGH check to KEY, cash withdrawal | |
| 29. | 1/6/00 | $90,000 USI check deposited into KEY's Compass Bank Account | | |
| 30. | 1/6/00 | | $5,500 KEY cash withdrawal (Compass) | |
| 31. | 1/6/00 | | | $6,000 McNAIR cash |
| 32. | 1/11/00 | | | $5,000 McNAIR cash |
| 33. | 1/12/00 | | | $3,000 McNAIR cash |
| 34. | 1/13/00 | | $9,000 KEY cash withdrawal (Compass) | |
| 35. | 1/14/00 | | | $7,000 McNAIR cash |
| 36. | 1/18/00 | | $9,000 KEY cash withdrawal (Compass) | |
| 37. | 1/19/00 | | $9,000 KEY cash withdrawal (Compass) | |
| 38. | 1/19/00 | | | $5,175 McNAIR cash |
| 39. | 01/20/00 | | | $4,000 McNAIR cash |
| 40. | 01/24/00 | | | $8,500 McNAIR cash |
| 41. | 01/26/00 | | $9,500 KEY cash withdrawal (Compass) | |
| 42. | 01/27/00 | | $9,500 KEY cash withdrawal (Compass) | |
| 43. | 2/1/00 | | | $6,300 McNAIR cash |
| 44. | 2/4/00 | | | $14,125 McNAIR cash |
| 45. | 2/9/00 | | $2,200 KEY cash withdrawal | |
| 46. | 2/10/00 | $90,000 check from SINGH to KEY, into Compass Bank | | |
| 47. | 2/10/00 | | $9,000 KEY cash withdrawal (Compass) | |
| 48. | 2/16/00 | | $9,000 KEY cash withdrawal (Compass) | |
| 49. | 2/16/00 | | $6,916 USI check to SINGH, cashed by KEY | |
| 50. | 2/17/00 | | | $6,900 McNAIR cash |
| 51. | 2/18/00 | | | $6,000 McNAIR cash |
| 52. | 2/22/00 | | $9,000 KEY cash withdrawal (Compass) | |

| O/As | Date | $ Deposited | USI, SINGH & KEY Cash Withdrawn | McNAIR Cash Depo's |
|------|------|-------------|----------------------------------|---------------------|
| 53. | 2/22/00 | | | $4,000 McNAIR cash |
| 54. | 2/23/00 | | $9,000 KEY cash withdrawal (Compass) | |
| 55. | 2/24/00 | | $7,403 USI check to SINGH, cashed by KEY | |
| 56. | 2/24/00 | | | $6,200 McNAIR cash |
| 57. | 3/14/00 | | $4,000 KEY cash withdrawal (Compass) | |
| 58. | 3/20/00 | | $6,000 KEY cash withdrawal (Compass) | |
| 59. | 3/28/00 | | | $7,000 McNAIR cash |
| 60. | 3/29/00 | | | $8,000 McNAIR cash |
| 61. | 4/05/00 | | | $7,000 McNAIR cash |
| 62. | 4/05/00 | | $7,188 USI check to SINGH, cashed by KEY | |
| 63. | 4/11/00 | | | $2,200 McNAIR cash |
| 64. | 4/12/00 | | | $3,600 McNAIR cash |
| 65. | 4/13/00 | | $8,000 USI check to SINGH, cashed by SINGH | |
| 66. | 4/14/00 | | $6,000 SINGH cashes check to "self" at AmSouth | |
| 67. | 4/18/00 | | $4,000 KEY cash withdrawal (Compass) | |
| 68. | 4/21/00 | $9,000 USI check, KEY | | |
| 69. | 4/21/00 | | $9,000 KEY cash withdrawal (Compass) | |
| 70 | 4/21/00 | | | $5,000 McNAIR cash |
| 71. | 5/2/00 | | $4,000 KEY cash withdrawal (Compass) | |
| 72. | 5/4/00 | | | $9,000 McNAIR cash |
| 73. | 5/8/00 | | | $5,000 McNAIR cash |
| 74. | 5/11/00 | 2 USI checks, $7,654 & $8,424 KEY puts into Compass Bank | | |
| 75. | 5/11/00 | | $7,650 KEY cash withdrawal (Compass) | |
| 76. | 5/20/00 | | $8,500 KEY cash withdrawal (Compass) | |
| 77. | 5/20/00 | | $1,553 USI check cashed by SINGH | |
| 78. | 5/22/00 | | | $6,100 McNAIR cash |

| O/As | Date | $ Deposited | USI, SINGH & KEY Cash Withdrawn | McNAIR Cash Depo's |
|---|---|---|---|---|
| 79. | 5/22/00 | | | $6,350 McNAIR cash |
| 80. | 5/26/00 | | $7,500 SINGH SunTrust check to KEY that he cashed | |
| 81. | 5/26/00 | | | $7,000 McNAIR cash |
| 82. | 6/2/00 | | $2,500 KEY cash withdrawal (Compass) | |
| 83. | 6/2/00 | | | $7,000 McNAIR cash |
| 84. | 6/6/00 | $7,908 USI check to SINGH, cashed by KEY | | |
| 85. | 6/7/00 | | $8,670 KEY cash withdrawal (Compass) | |
| 86. | 6/12/00 | | | $5,900 McNAIR cash |
| 87. | 6/20/00 | | | $4,000 McNAIR cash |
| 88. | 6/22/00 | | $2,000 SINGH check that SINGH cashed | |
| 89. | 6/28/00 | | $9,000 KEY cash withdrawal (Compass) | |
| 90. | 7/3/00 | | | $9,000 McNAIR cash |
| 91. | 7/5/00 | | | $9,000 McNAIR cash |
| 92. | 7/7/00 | | | $5,000 McNAIR cash |
| 93. | 7/11/00 | | $7,698 USI check to SINGH, cashed by SINGH | |
| 94. | 7/14/00 | | | $8,000 McNAIR cash |
| 95. | 7/18/00 | $90,000 USI check to KEY, AmSouth depo. | | |
| 96. | 7/19/00 | | $6,200 KEY cash withdrawal from AmSouth | |
| 97. | 7/28/00 | | $4,000 SINGH cash withdrawal from AmSouth | |
| 98. | 7/28/00 | | | $6,900 McNAIR cash |
| 99. | 8/3/00 | | $5,000 SINGH cash withdrawal from AmSouth | |
| 100. | 8/3/00 | | | $8,000 McNAIR cash |
| 101. | 8/7/00 | | | $4,200 McNAIR cash |
| 102. | 8/8/00 | | | $4,800 McNAIR cash |
| 103. | 8/9/00 | | | $7,000 McNAIR cash |

| O/As | Date | $ Deposited | USI, SINGH & KEY Cash Withdrawn | McNAIR Cash Depo's |
|------|------|-------------|--------------------------------|--------------------|
| 104. | 8/17/00 | | $3,300 KEY cash withdrawal from AmSouth Acct. | |
| 105. | 8/23/00 | | $5,000 SINGH cash withdrawal from AmSouth | |
| 106. | 9/01/00 | | $3,000 SINGH cash withdrawal from AmSouth | |
| 107. | 9/06/00 | | | $5,000 McNAIR cash |
| 108. | 9/15/00 | | | $7,000 McNAIR cash |
| 109. | 10/17/00 | | | $7,000 McNAIR cash |
| 110. | 10/23/00 | | | $8,000 McNAIR cash |
| 111. | 10/26/00 | | | $7,000 McNAIR cash |
| 112. | 11/01/00 | | | $5,000 McNAIR cash |
| 113. | 11/7/00 | | $5,000 KEY cashes check from AmSouth Account | |
| 114. | 11/9/00 | | $5,000 KEY cashes check from AmSouth Account | |
| 115. | 11/10/00 | | $6,000 SINGH check to "SELF" from SunTrust | |
| 116. | 11/13/00 | | | $5,000 McNAIR cash |
| 117. | 11/27/00 | | | $7,100 McNAIR cash |
| 118. | 11/30/00 | | | $5,000 McNAIR cash |
| 119. | 12/13/00 | | $9,500 KEY cashes check from AmSouth Account | |
| 120. | 12/15/00 | | | $4,400 McNAIR cash |
| 121. | 12/29/00 | | | $1,000 McNAIR cash |
| 122. | 1/12/01 | | | $5,000 McNAIR cash |
| 123. | 01/26/01 | | | $2,030 McNAIR cash |
| 124. | 1/30/01 | | $1,500 KEY cashes check from AmSouth Account | |
| 125. | 2/02/01 | | | $4,200 McNAIR cash |
| 126. | 2/15/01 | | | $3,000 McNAIR cash |
| 127. | 2/26/01 | | | $7,000 McNAIR cash |
| 128. | 2/28/01 | | | $5,000 McNAIR cash |
| 129. | 3/19/01 | | | $5,000 McNAIR cash |

**All in violation of Title 18 U.S.C. Section 371.**

**COUNT FIFTY-ONE**

**(18 U.S.C. § 371 - Conspiracy to Commit Bribery)**

<u>THE CONSPIRACY</u>

1.     The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.     JACK W. SWANN; JOSEPH E. "EDDIE" YESSICK; ROLAND PUGH CONSTRUCTION, INC. ("PUGH, INC."); BOBBY J. RAST; DANIEL B. "DANNY" RAST; RAST CONSTRUCTION, INC. ("RAST, INC."); FLOYD W. "PAT" DOUGHERTY ("DOUGHERTY") and; F.W. DOUGHERTY ENGINEERING & ASSOCIATES, INC. ("FWDE, INC.") are hereby named as DEFENDANTS in this count.

3.     From in or about September 1998, and continuing at least through November 2003, the exact dates being unknown to the Grand Jury, within the Northern District of Alabama and elsewhere, Defendants SWANN; YESSICK; PUGH, INC.; BOBBY RAST; DANNY RAST; RAST, INC.; DOUGHERTY; and FWDE, INC., did knowingly and willfully combine, conspire, and agree with each other and others, both known and unknown to the Grand Jury, to commit offenses against the United States, to wit:

      (a) to corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of county government, which county government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, and series of transactions of such county government involving anything of value of $5,000 or more, in violation of Title 18 United States Code, Section 666(a)(2); and

(b) being an agent of the county government, which county government received federal assistance in excess of $10,000 in a one-year period, to corruptly solicit and demand for the benefit of any person, and accept and agree to accept, anything of value from any person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of such county government involving anything of value of $5,000 or more, in violation of Title 18, United States Code, Section 666(a)(1)(B).

## THE OBJECTS OF THE CONSPIRACY

4.      It was an object of the conspiracy for Defendant SWANN, the Director of the JCESD, to enrich himself by corruptly soliciting and accepting things of value with the intent of being influenced and rewarded for supporting the interests of Defendants YESSICK; PUGH, INC.; BOBBY RAST; DANNY RAST; RAST, INC.; DOUGHERTY, and FWDE, INC. in connection with the JCESD sewer construction contracting program.

5.      It was further an object of the conspiracy for Defendants YESSICK; PUGH, INC.; BOBBY RAST; DANNY RAST; RAST, INC.; DOUGHERTY, and FWDE, INC., aided and abetted by each other, to corruptly give, offer, and agree to give things of value to Defendant SWANN with the intent of influencing and rewarding him for supporting their interests in connection with the JCESD sewer construction contracting program.

## MANNER AND MEANS OF THE CONSPIRACY

6.      It was part of the conspiracy that Defendant SWANN, while he was the Director of the JCESD, would and did corruptly solicit and accept construction, remodeling, and landscaping services valued at over $250,000 for his houses at 641 and 645 Winwood Drive, Vestavia Hills, Alabama; a trip to London, England in 1999 worth $4,510; a trip to

37

Scotland and England in 2001 worth $3,015; and $1,000 in gift certificates for Alabama

BookSmith from Defendants YESSICK; PUGH, INC.; BOBBY RAST; DANNY RAST;

RAST, INC.; DOUGHERTY, and FWDE, INC., contractors that performed work for the

JCESD.

7.    It was further part of the conspiracy that Defendants SWANN, YESSICK, and PUGH,

INC. attempted to conceal the existence of these bribes by, among other things, causing

false and fraudulent invoices to be made and by making payments to PUGH, INC. totaling

$60,696.95 after they learned of the bribery investigation.

8.    It was also part of the conspiracy that Defendant SWANN would and did corruptly

provide favorable treatment to Defendants YESSICK; PUGH, INC.; BOBBY RAST;

DANNY RAST; RAST, INC.; DOUGHERTY; and FWDE, INC. in conjunction with

contracting on JCESD matters in exchange for the many bribes paid by these defendants.

<u>OVERT ACTS</u>

1.    Between September 1998 and September 1999, the exact dates being unknown to the

Grand Jury, Defendant DOUGHERTY caused Wayne Hendon, an employee of Defendant

FWDE, INC., to work at 645 Winwood Drive, Vestavia Hills, Alabama, as a supervisor of

the construction process at the house of Defendant SWANN.  The benefit to Defendant

SWANN was approximately $51,616.

2.    In or about September 1998, the exact dates being unknown to the Grand Jury, Defendant

BOBBY RAST caused agents of RAST, INC. to tear down an existing carport at 645

Winwood Drive, Vestavia Hills, Alabama, at a cost of several thousand dollars, for the

benefit of Defendant SWANN.

3.      In or about the Fall of 1998, the exact dates being unknown to the Grand Jury, Defendant BOBBY RAST caused agents of RAST, INC. to pour several concrete slabs and walkways at 645 Winwood Drive, Vestavia Hills, Alabama, at a cost of several thousand dollars, for the benefit of Defendant SWANN.

4.      On September 24, 1998, Defendant DOUGHERTY caused FWDE, INC. to pay $2,586 to Dudley Davis for construction work to the benefit of Defendant SWANN.

5.      On October 1, 1998, Defendant DOUGHERTY caused FWDE, INC. to pay $2,586 to Dudley Davis for construction work to the benefit of Defendant SWANN.

6.      On October 9, 1998, Defendant DOUGHERTY caused  FWDE, INC. to pay $2,586 to Dudley Davis for construction work to the benefit of Defendant SWANN.

7.      On October 15, 1998, Defendant DOUGHERTY caused FWDE, INC. to pay $2,586 to Dudley Davis for construction work to the benefit of Defendant SWANN.

8.      On October 22, 1998, Defendant DOUGHERTY caused FWDE, INC. to pay $3,448 to Dudley Davis for construction work to the benefit of Defendant SWANN.

9.      On October 29, 1998, Defendant DOUGHERTY caused FWDE, INC. to pay $2,155 to Dudley Davis for construction work to the benefit of Defendant SWANN.

10.     On November 5, 1998, Defendant DOUGHERTY caused FWDE, INC. to pay $2,155 to Dudley Davis for construction work to the benefit of Defendant SWANN.

11.     On November 12, 1998, Defendant DOUGHERTY caused FWDE, INC. to pay $2,155 to Dudley Davis for construction work to the benefit of Defendant SWANN.

12.     On November 19, 1998, Defendant DOUGHERTY caused FWDE, INC. to pay $3,017 to Dudley Davis for construction work to the benefit of Defendant SWANN.

13.      On December 3, 1998, Defendant DOUGHERTY caused FWDE, INC. to pay $2,155 to Dudley Davis for construction work to the benefit of Defendant SWANN.

14.      On December 10, 1998, Defendant DOUGHERTY caused FWDE, INC. to pay $1,551 to Dudley Davis for construction work to the benefit of Defendant SWANN.

15.      On December 29, 1998, Defendant DOUGHERTY caused FWDE, INC. to pay $1,551 to Dudley Davis for construction work to the benefit of Defendant SWANN.

16.      Between July 29, 1999 and August 14, 1999, Defendants BOBBY RAST and DANNY RAST caused Defendant RAST, INC. to pay approximately $4,510 for Defendant SWANN to travel to England for the benefit of Defendant SWANN.

17.      On or about September 3, 1999, Defendant RAST, INC. paid $1,054 to Alabama Brick Delivery for masonry materials for the benefit of Defendant SWANN.

18.      Between September 1999 and August 2000, the exact dates being unknown to the Grand Jury, Defendant DANNY RAST caused Derek Houston, an agent of Defendant RAST, INC., to work at 645 Winwood Drive, Vestavia Hills, Alabama, as a supervisor of the construction process at the house of Defendant SWANN.  The benefit to Defendant SWANN had an approximate value of $10,000.

19.      On or about October 11, 1999, Defendant RAST, INC. paid $909 to Alabama Brick Delivery for masonry materials for the benefit of Defendant SWANN.

20.      On or about May 25, 2000, Defendant BOBBY RAST caused an agent of Defendant RAST, INC. to pay $4,441 to Sherman International for concrete installed at the house of Defendant SWANN.

21.    In or about June 2000, the exact dates being unknown to the Grand Jury, Defendant YESSICK, and other agents of Defendant PUGH, INC., contacted "Aquatic Gardens" about installing a waterfall and decorative pond in the yard of Defendant SWANN.

22.    In or about the June 2000, the exact dates being unknown to the Grand Jury, Defendant YESSICK, and other agents of Defendant PUGH, INC., contacted "Guthrie Landscaping" about installing landscaping in the yards of Defendant SWANN at 641 and 645 Winwood Drive, Vestavia Hills, Alabama.

23.    On or about August 23, 2000, an agent of Defendant RAST, INC. paid $3,535 to Don's Carpet One to the benefit of Defendant SWANN.

24.    Between September 2000 and April 2001, the exact dates being unknown to the Grand Jury, Defendant DOUGHERTY caused John Stanger, an employee of Defendant FWDE, INC., to work at 645 Winwood Drive, Vestavia Hills, Alabama, as a supervisor of the construction process at the house of Defendant SWANN.  The benefit to Defendant SWANN had an approximate value of $24,176.

25.    On or about September 14, 2000, an agent of Defendant RAST, INC. paid Kimro Painting $3,000 for painting at the home of Defendant SWANN.

26.    On or about September 21, 2000, an agent of Defendant RAST, INC. paid Kimro Painting $3,000 for painting at the home of Defendant SWANN.

27.    On or about September 27, 2000, an agent of Defendant RAST, INC. paid Kimro Painting $233 for an invoice on painting at the home of Defendant SWANN.

28.    On or about September 28, 2000, an agent of Defendant RAST, INC. paid Kimro Painting $3,500 for an invoice on painting at the home of Defendant SWANN.

29.     In or about November 2000, the exact dates being unknown to the Grand Jury, Defendant YESSICK instructed Guthrie Landscaping to bill Defendant PUGH, INC. for work at the house of Defendant SWANN, using job code "49908-E" for Defendant SWANN's existing house at 641 Winwood Drive, Vestavia Hills, Alabama.

30.     In or about November of 2000, the exact dates being unknown to the Grand Jury, Defendant YESSICK instructed Guthrie Landscaping to bill Defendant PUGH, INC. for work at the house of Defendant SWANN, using job code "49908-N" for Defendant SWANN's new house at 645 Winwood Drive, Vestavia Hills, Alabama.

31.     On or about December 13, 2000, Defendant YESSICK caused Defendant PUGH, INC. to pay Guthrie Landscaping $15,635 for invoices on landscaping in the yards of Defendant SWANN.

32.     On or about December 13, 2000, Defendant YESSICK caused Defendant PUGH, INC. to create an accounting entry on the accounting books of Defendant PUGH, INC. to show a $100,000 landscaping expense to be incurred on Metro Park Roadway (PUGH, INC. job number 49908) in order to conceal the projected expenses to be incurred in landscaping the yards of Defendant SWANN.

33.     On or about December 22, 2000, Defendant YESSICK caused Defendant PUGH, INC. to pay Aquatic Gardens $6,680 for an invoice on construction of a waterfall and pond in the yard of Defendant SWANN.

34.     On or about January 16, 2001, Defendant YESSICK caused Defendant PUGH, INC. to pay Guthrie Landscaping $10,437 for an invoice on landscaping in the yards of Defendant SWANN.

35.    On or about February 15, 2001, Defendant YESSICK caused Defendant PUGH, INC. to pay Guthrie Landscaping $33,622 for invoices on landscaping in the yards of Defendant SWANN.

36.    On or about March 13, 2001, Defendant YESSICK caused Defendant PUGH, INC. to pay Guthrie Landscaping $15,201 for an invoice on landscaping in the yards of Defendant SWANN.

37.    On or about April 12, 2001, Defendant YESSICK caused Defendant PUGH, INC. to pay Guthrie Landscaping $5,686 for invoices on landscaping in the yards of Defendant SWANN.

38.    On or about July 16, 2001, agents for Defendant PUGH, INC. paid Guthrie Landscaping $603 for invoices on landscaping in the yards of Defendant SWANN.

39.    On or about August 14, 2001, agents for Defendant PUGH, INC. paid Guthrie Landscaping $1,207 for invoices on landscaping in the yards of Defendant SWANN.

40.    On or about August 14, 2001, Defendant YESSICK caused Defendant PUGH, INC. to pay Aquatic Gardens $742 for the final invoice on construction of a waterfall and pond in the yard of Defendant SWANN.

41.    Between September 6, 2001 and September 21, 2001, Defendants BOBBY RAST and DANNY RAST caused Defendant RAST, INC. to pay approximately $3,015 for Defendant SWANN to travel to England and Scotland for the benefit of Defendant SWANN.

42.    On or about September 14, 2001, agents for Defendant PUGH, INC. paid Guthrie Landscaping $6,835 for invoices on landscaping in the yards of Defendant SWANN.

43.     On or about October 8, 2001, Defendant BOBBY RAST caused an agent of Defendant

        RAST, INC. to pay Brown Mechanical Contractors, Inc. $8,940 for plumbing at 645

        Winwood Drive for the benefit of Defendant SWANN.

44.     On or about October 16, 2001, agents for Defendant PUGH, INC. paid Guthrie

        Landscaping $2,040 for invoices on landscaping in the yards of Defendant SWANN.

45.     On or about November 16, 2001, agents for Defendant PUGH, INC. paid Guthrie

        Landscaping $1,207 for invoices on landscaping in the yards of Defendant SWANN.

46.     On or about December 14, 2001, Defendant YESSICK caused agents of RPC, INC. to pay

        $1,000 to Alabama BookSmith for gift certificates for Defendant SWANN.

47.     On or about December 18, 2001, agents for Defendant PUGH, INC. paid Guthrie

        Landscaping $1,207 for invoices on landscaping in the yards of Defendant SWANN.

48.     On or about January 16, 2002, Defendant YESSICK caused an agent of Defendant PUGH,

        INC. to issued a check to Guthrie Landscaping for $47,000 as payment for landscaping to

        be done in the yards of Defendant SWANN.

49.     Between January 2002 and the summer of 2002, the exact dates being unknown to the

        Grand Jury, Guthrie Landscaping continued to do weekly landscaping in accordance with

        the earlier agreement with Defendants YESSICK and PUGH, INC.

50.     In or about August 2002, the exact dates being unknown to the Grand Jury, Defendant

        YESSICK caused an agent of Defendant PUGH, INC. to create a false and fraudulent

        invoice in the amount of $12,572.95, addressed to Frankie Pierce at 2275 N. Sherrlyn

        Drive, Birmingham, Alabama, in an effort to conceal the money that PUGH, INC.

        previously had paid Guthrie Landscaping for work done for Defendant SWANN.

51.     On or about September 26, 2002, Defendant YESSICK caused an agent of Defendant PUGH, INC. to create a false and fraudulent invoice in the amount of $46,684, addressed to Mary Swann at 108 Morgan Street, Talladega, Alabama, in an effort to conceal the money that PUGH, INC. previously had paid Guthrie Landscaping and Aquatic Gardens for work done in the yards of Defendant SWANN.

52.     On or about November 26, 2002, Defendant SWANN caused his wife to write a check to Defendant PUGH, INC. in the amount of $46,684 for work supposedly done for Mary Swann, but which work really had been done for the benefit of Defendant SWANN.

53.     On or about December 16, 2002, Defendant SWANN caused his wife to write a check to Defendant PUGH, INC. in the amount of $12,572.95 for work supposedly done for Frankie Pierce, but which work really had been done for the benefit of Defendant SWANN.

54.     On or about November 2, 2003, Defendant SWANN wrote a check to Defendant PUGH, INC. for $1,440 for work supposedly done for Mary Swann, but which work really had been done for the benefit of Defendant SWANN.

**All in violation of Title 18 U.S.C. Section 371.**


## COUNTS FIFTY-TWO to SIXTY

### (18 U.S.C. § 666 – Bribery)

1.     The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.     JACK W. SWANN is hereby named as DEFENDANT in this count.

45

3.      From at least July 2000 and continuing at least through August 2002, the exact dates being

unknown to the Grand Jury, in the Northern District of Alabama and elsewhere,

Defendant JACK W. SWANN being an agent of the county government, which county

government received federal assistance in excess of $10,000 in a one-year period, did

corruptly solicit and demand for the benefit of any person, and accept and agree to accept,

anything of value from any person, intending to be influenced and rewarded in connection

with any business, transaction, and series of transactions of such government involving

anything of value of $5,000 or more, to wit: Defendant SWANN, being an employee of

Jefferson County, Alabama, corruptly solicited, accepted, and agreed to accept the

following:

–From Joseph E. "Eddie" Yessick and Roland Pugh Construction, Inc.:

**Count 52:**  Landscaping from Guthrie Landscaping with an approximate value of

$100,000;

**Count 53:**  Installation of a waterfall and pond from Aquatic Gardens with an

approximate value of $7,422; and

**Count 54:**  Gift certificates to Alabama BookSmith worth $1,000;

–From Bobby J. Rast; Daniel B. "Danny" Rast; Rast Construction, Inc.:

**Count 55:**  Supervision of construction work by Derek Houston with an approximate

value of $1,000;

**Count 56:**  Installation of flooring from Don's Carpet with an approximate value of

$3,535;

**Count 57:**  Painting from Kimro Painting with an approximate value of $9,733;

46

**Count 58:**  Plumbing from Brown Mechanical Contractors, Inc. with an approximate value of $8,940; and

**Count 59:**  Payments totaling $3,015 for a trip to England and Scotland; and

–From Floyd W. "Pat" Dougherty and F.W. Dougherty Engineering & Associates, Inc.:

**Count 60:**  Supervision of construction work by John Stanger with an approximate value of $24,176,

in each instance intending to be influenced and rewarded in connection with the JCESD sewer construction contracting program.

**Each Count in Violation of Title 18 United States Code, Sections 666(a)(1)(B).**

## COUNTS SIXTY-ONE to SIXTY-THREE

## (18 U.S.C. § 666 – Bribery)

1.    The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.    JOSEPH E. "EDDIE" YESSICK; and ROLAND PUGH CONSTRUCTION, INC. ("PUGH, INC.") are hereby named as DEFENDANTS in this count.

3.    From at least July 2000 and continuing at least through August 2002, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendants YESSICK and PUGH, INC., aided and abetted by each other, did corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of county government, which county government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, or series of transactions of such county government involving anything of

value of $5,000 or more, to wit: Defendants YESSICK and PUGH, INC. corruptly

offered, gave, and agreed to give to Jack W. Swann:

**Count 61:**  Landscaping from Guthrie Landscaping with an approximate value of

$140,680;

**Count 62:**  Installation of a waterfall and pond from Aquatic Gardens with an

approximate value of $7,422; and

**Count 63:**  Gift certificates to Alabama BookSmith worth $1,000,

in each instance intending to influence and reward Jack Swann and to be rewarded in

connection with the JCESD sewer construction contracting program.

**Each Count in violation of Title 18 United States Code, Sections 666(a)(2) and 2.**


## COUNTS SIXTY-FOUR to SIXTY-EIGHT

## (18 U.S.C. § 666 – Bribery)

1.    The allegations in the first twenty-eight paragraphs of this Indictment are realleged and

incorporated herein.

2.    BOBBY J. RAST; DANIEL B. "DANNY" RAST; and RAST CONSTRUCTION, INC.

("RAST, INC.") are hereby named as DEFENDANTS in this count.

3.    From at least July 2000 and continuing at least through December 2001, the exact dates

being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere,

Defendants BOBBY RAST; DANNY RAST; and RAST, INC., aided and abetted by each

other, did corruptly give, offer, and agree to give anything of value to any person, with

intent to influence and reward an agent of county government, which county government

received federal assistance in excess of $10,000 in a one-year period, in connection with

any business, transaction, or series of transactions of such county government involving anything of value of $5,000 or more, to wit: Defendants BOBBY RAST; DANNY RAST; and RAST, INC. corruptly offered, gave, and agreed to give to Jack W. Swann:

**Count 64:**  Supervision of construction work by Derek Houston with an approximate value of $1,000;

**Count 65:**  Installation of flooring from Don's Carpet with approximate value of $3,535;

**Count 66:**  Painting from Kimro Painting with an approximate value of $9,733;

**Count 67:**  Plumbing from Brown Mechanical Contractors, Inc. with an approximate value of $8,940; and

**Count 68:**  Payments totaling $3,015 for a trip to England and Scotland,

in each instance intending to influence and reward Jack Swann and to be rewarded in connection with the JCESD sewer construction contracting program.

**Each Count in Violation of Title 18 United States Code, Sections 666(a)(2) and 2.**


### COUNT SIXTY-NINE

### (18 U.S.C. § 666 – Bribery)

1.    The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.    FLOYD W. "PAT" DOUGHERTY ("DOUGHERTY"); and F.W. DOUGHERTY ENGINEERING & ASSOCIATES, INC. ("FWDE, INC.") are hereby named as DEFENDANTS in this count.

3.    From at least July 2000 and continuing at least through April 2001, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere,

49

Defendants DOUGHERTY and FWDE, INC., aided and abetted by each other, did corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of county government, which county government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, or series of transactions of such county government involving anything of value of $5,000 or more, to wit: Defendants DOUGHERTY and FWDE, INC. corruptly offered, gave, and agreed to give to Jack W. Swann:

**Count 69:** Supervision of construction work by John Stanger with an approximate value of $24,176, intending to influence and reward Jack Swann and to be rewarded in connection with the JCESD sewer construction contracting program.

**All in violation of Title 18 United States Code, Sections 666(a)(2) and 2.**

## COUNT SEVENTY to SEVENTY-ONE

### (18 U.S.C. § 666 – Bribery)

1.   The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.   JOSEPH E. "EDDIE" YESSICK  and ROLAND PUGH CONSTRUCTION, INC. ("PUGH, INC.") are hereby named as DEFENDANTS in this count.

3.   From at least March 2000 and continuing at least through November 2001, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendants YESSICK and PUGH, INC., aided and abetted by each other, did corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of county government, which county government received federal

assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, or series of transactions of such county government involving anything of value of $5,000 or more, to wit: Defendants YESSICK and PUGH, INC. corruptly offered, gave, and agreed to give:

**Count 70:** A trip to Bienville Plantation in White Springs, Florida with a value of approximately $1,000; and

**Count 71:**  A condominium rental at Pelican Beach Condominiums on the Gulf of Mexico, with a value of $610,

in each instance intending to influence and reward Harry Chandler and to be rewarded in connection with the JCESD sewer construction contracting program.

**Each Count in Violation of Title 18 United States Code, Sections 666(a)(2) and 2.**


## COUNT SEVENTY-TWO

## (18 U.S.C. § 666 – Bribery)

1.    The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.    BOBBY J. RAST and RAST CONSTRUCTION, INC. ("RAST, INC.") are named as DEFENDANTS in this Count.

3.    On or about May 2002, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendants BOBBY RAST and RAST, INC., aided and abetted by each other, did corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of county government, which county government received federal assistance in excess of $10,000 in a one-year period,

in connection with any business, transaction, or series of transactions of such government involving anything of value of $5,000 or more, to wit: Defendants BOBBY RAST and RAST, INC. corruptly offered, gave, and agreed to give an envelope containing $2,500 cash to Harry T. Chandler, an employee of Jefferson County, intending to influence and reward him and to be rewarded in connection with the JCESD sewer construction contracting program.

**All in Violation of Title 18 United States Code, Sections 666(a)(2) and 2.**


## COUNT SEVENTY-THREE to SEVENTY-FOUR

## (18 U.S.C. § 666 – Bribery)

1.  The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.  SOHAN P. SINGH, EDWARD T. KEY, Jr., and US INFRASTRUCTURE, INC. ("USI") are named as DEFENDANTS in this Count.

3.  On or about December 2003 and continuing at least until December 2004, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendants SOHAN P. SINGH, EDWARD T. KEY, Jr., and USI, aided and abetted by each other, did corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of county government, which county government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, or series of transactions of such government involving anything of value of $5,000 or more, to wit: Defendants SOHAN P. SINGH,

EDWARD T. KEY, Jr., and USI corruptly offered, gave, and agreed to give to Harry T. Chandler, an employee of Jefferson County:

**Count 73:**  A $2,000 gift card to Parisian's Department Store; and

**Count 74:** An envelope containing $1,500 cash,

in each instance intending to influence and reward Harry Chandler and to be rewarded in connection with the JCESD sewer construction contracting program.

**Each Count in Violation of Title 18 United States Code, Sections 666(a)(2) and 2.**

## COUNT SEVENTY-FIVE

### (18 U.S.C. § 371 - Conspiracy to Commit Bribery)

1. The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2. RONALD K. WILSON and ROLAND PUGH CONSTRUCTION, INC. ("PUGH, INC.") are named as DEFENDANTS in this Count.

<u>THE CONSPIRACY</u>

3. From in or about August 1999, and continuing at least through June 2000, the exact dates being unknown to the Grand Jury, within the Northern District of Alabama and elsewhere, Defendants WILSON and PUGH, INC., did knowingly and willfully combine, conspire, and agree with each other and others, both known and unknown to the Grand Jury, to commit offenses against the United States, to wit:

   (a) to corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of county government, which county government received federal assistance in excess of $10,000 in a one-year period,

53

in connection with any business, transaction, and series of transactions of such

county government involving anything of value of $5,000 or more, in violation of

Title 18 United States Code, Section 666(a)(2); and

(b) being an agent of the county government, which county government received

federal assistance in excess of $10,000 in a one-year period, to corruptly solicit

and demand for the benefit of any person, and accept and agree to accept, anything

of value from any person, intending to be influenced and rewarded in connection

with any business, transaction, and series of transactions of such county

government involving anything of value of $5,000 or more, in violation of

Title 18, United States Code, Section 666(a)(1)(B).

<u>THE OBJECTS OF THE CONSPIRACY</u>

4.      It was an object of the conspiracy for Defendant WILSON, Chief Civil Engineer of the

JCESD and member of the Product Review Committee, to enrich himself by corruptly

soliciting and accepting things of value with the intent of being influenced and rewarded

for supporting the interests of Defendant PUGH, INC. and Grady R. Pugh, Jr. in

connection with the JCESD sewer rehabilitation construction program.

5.      It was further an object of the conspiracy for Defendant PUGH, INC., through Grady R.

Pugh, Jr., to corruptly give, offer, and agree to give things of value to Defendant WILSON

with the intent of influencing and rewarding him for supporting their interests in

connection with the JCESD sewer rehabilitation construction program.

<u>MANNER AND MEANS OF THE CONSPIRACY</u>

54

6.     It was part of the conspiracy that Defendant WILSON, while he was the Chief Civil Engineer with the JCESD, would and did corruptly solicit and accept a $4,500 payment from Defendant PUGH, INC., a contractor that performed work for the JCESD.

7.     It was further part of the conspiracy that Defendants WILSON and PUGH, INC., and Grady R. Pugh, Jr., did agree to conceal the existence of their scheme by making the payment to the University of Alabama at Birmingham ("UAB") in the form of a bogus scholarship for Defendant WILSON's son.

<u>OVERT ACTS</u>

1.     In or about August 1999, the exact dates being unknown to the Grand Jury, Defendant WILSON communicated with an agent of Defendant PUGH, INC. about paying money to UAB for the benefit of Defendant WILSON's son.

2.     On or about August 24, 1999, Grady R. Pugh, Jr. caused agents of Defendant PUGH, INC. to pay UAB $4,500, as a bogus scholarship directed to the UAB student account of Defendant WILSON's son.

3.     On or about September 15, 1999, Defendant WILSON received the benefit of one-quarter of the $4,500 paid by Defendant PUGH, INC. to wit:  $1,125, when UAB applied that $1,125 to the UAB student account of Defendant WILSON's son.

4.     On or about December 27, 1999, Defendant WILSON received the benefit of one-quarter of the $4,500 paid by Defendant PUGH, INC. to wit:  $1,125, when UAB applied that $1,125 to the UAB student account of Defendant WILSON's son.

5.     On or about March 17, 2000, Defendant WILSON received the benefit of one-quarter of the $4,500 paid by Defendant PUGH, INC. to wit:  $1,125, when UAB applied that $1,125 to the UAB student account of Defendant WILSON's son.

6.    On or about June 7, 2000, Defendant WILSON received the benefit of one-quarter of the

$4,500 paid by Defendant PUGH, INC. to wit:  $1,125, when UAB applied that $1,125 to

the UAB student account of Defendant WILSON's son.

**All in violation of Title 18 U.S.C. Section 371.**

## COUNT SEVENTY-SIX

### (18 U.S.C. § 666 – Bribery)

1.    The allegations in the first twenty-eight paragraphs of this Indictment are realleged and

incorporated herein.

2.    From on or about August 1999 and continuing through June 7, 2000, the exact dates being

unknown to the Grand Jury, in the Northern District of Alabama and elsewhere,

Defendant RONALD K. WILSON being an agent of the county government, which

county government received federal assistance in excess of $10,000 in a one-year period,

did corruptly solicit and demand for the benefit of any person, and accept and agree to

accept, anything of value from any person, intending to be influenced and rewarded in

connection with any business, transaction, and series of transactions of such government

involving anything of value of $5,000 or more, to wit: Defendant WILSON, being an

employee of the JCESD and member of the Product Review Committee, corruptly

solicited, accepted, and agreed to accept proceeds from a bogus scholarship paid for by

Grady Pugh and Roland Pugh Construction, Inc. through UAB when UAB applied two

disbursements of $1,125 each from that bogus scholarship to the account of Defendant

WILSON's son on March 23, 2000, and June 7, 2000, intending to be influenced and

rewarded in connection with the JCESD and the Product Review Committee.

**All in violation of Title 18 United States Code, Section 666(a)(1)(B).**

56

## COUNT SEVENTY-SEVEN

### (18 U.S.C. § 666 and 2 – Bribery)

1.     The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.     From on or about August 1999 and continuing through June 2000, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendant ROLAND PUGH CONSTRUCTION, INC. ("PUGH, INC."), did corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of county government, which county government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, or series of transactions of such government involving anything of value of $5,000 or more, to wit: Defendant PUGH, INC. corruptly offered, gave, and agreed to give proceeds from a bogus scholarship that they paid through UAB when UAB applied two disbursements totaling $2,250 from that bogus scholarship to the account of Defendant WILSON's son, intending to influence and reward him in connection with the JCESD and the Product Review Committee.

       **All in violation of Title 18 United States Code, Section 666(a)(2).**


## COUNT SEVENTY-EIGHT

### (18 U.S.C. § 371 - Conspiracy to Commit Bribery)

1.     The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.   CLARENCE R. BARBER, GRADY R. "ROLAND" PUGH, JOSEPH E. "EDDIE"

YESSICK, and ROLAND PUGH CONSTRUCTION, INC. ("PUGH, INC.") are named as

DEFENDANTS in this Count.

THE CONSPIRACY

3.   From in or about May 1997, and continuing at least through May 2003, the exact dates

being unknown to the Grand Jury, within the Northern District of Alabama and elsewhere,

Defendants BARBER, ROLAND PUGH, YESSICK, and PUGH, INC. did knowingly and

willfully combine, conspire, and agree with each other and others, both known and

unknown to the Grand Jury, to commit offenses against the United States, to wit:

(a) to corruptly give, offer, and agree to give anything of value to any person, with

intent to influence and reward an agent of county government, which county

government received federal assistance in excess of $10,000 in a one-year period,

in connection with any business, transaction, and series of transactions of such

county government involving anything of value of $5,000 or more, in violation of

Title 18 United States Code, Section 666(a)(2); and

(b) being an agent of the county government, which county government received

federal assistance in excess of $10,000 in a one-year period, to corruptly solicit

and demand for the benefit of any person, and accept and agree to accept, anything

of value from any person, intending to be influenced and rewarded in connection

with any business, transaction, and series of transactions of such county

government involving anything of value of $5,000 or more, in violation of

Title 18, United States Code, Section 666(a)(1)(B).

THE OBJECTS OF THE CONSPIRACY

58

4.      It was an object of the conspiracy for Defendant BARBER, Construction and Maintenance

Supervisor for the JCESD, to enrich himself by corruptly soliciting and accepting things

of value with the intent of being influenced and rewarded for supporting the interests of

Defendants ROLAND PUGH, YESSICK, and PUGH, INC. in connection with the JCESD

sewer construction contracting program.

5.      It was further an object of the conspiracy for Defendants ROLAND PUGH, YESSICK,

and PUGH, INC. to corruptly give, offer, and agree to give things of value to Defendant

BARBER with the intent of influencing and rewarding him for supporting their interests

in connection with the JCESD sewer construction contracting program.

<u>MANNER AND MEANS OF THE CONSPIRACY</u>

6.      It was part of the conspiracy that Defendant BARBER, while he was the Supervisor of

Construction and Maintenance with the JCESD, would and did corruptly solicit and accept

real property with a value of  $47,927 and numerous vacation trips to casinos and beaches

from Defendants ROLAND PUGH, YESSICK, and PUGH, INC., a contractor that

performed work for the JCESD.

7.      It was part of the conspiracy that Defendants BARBER, ROLAND PUGH, YESSICK,

and PUGH, INC. did agree to conceal the existence of their scheme by disguising the real

property transaction in the form of a bogus loan from Defendant PUGH, INC. to

Defendant BARBER.

8.      It was further a part of the conspiracy that Defendant BARBER would and did corruptly

provide favorable treatment to Defendants ROLAND PUGH, YESSICK and PUGH, INC.

in conjunction with contracting on JCESD matters in exchange for the many bribes paid

by these defendants.

<u>OVERT ACTS</u>

1.      In or about the Summer of 1997, Defendant PUGH, INC. paid for unit 803 at Romar Place Condominiums in Gulf Shores, Alabama, for the benefit of Defendant BARBER, by issuing checks for $200 and $992 to Meyer Real Estate.

2.      Between September 6 and September 13, 1997, Defendant BARBER stayed at Romar Place Condominiums, unit 803, in Gulf Shores, Alabama, which was paid for by Defendant PUGH, INC.

3.      In or about the Summer of 1998, Defendant PUGH, INC. paid for unit 904 at Romar Place Condominiums in Gulf Shores, Alabama, for the benefit of Defendant BARBER, by issuing checks for $200 and $892 to Meyer Real Estate.

4      Between September 7 and September 13, 1998, Defendant BARBER stayed at Romar Place Condominiums, unit 904, in Gulf Shores, Alabama, which was paid for by Defendant PUGH, INC.

5.      In or about September of 1999, Defendant PUGH, INC. paid for unit 405 at Romar Place Condominiums in Gulf Shores, Alabama, for the benefit of Defendant BARBER, by issuing checks for $200 and $816 to Meyer Real Estate.

6.      Between September 19 and September 24, 1999, Defendant BARBER stayed at Romar Place Condominiums, unit 405, in Gulf Shores, Alabama, which was paid for by Defendant PUGH, INC.

7.      In or about the Summer of 2000, the exact dates being unknown to the Grand Jury, Defendant YESSICK approached a realtor about finding residential land in the area of McCalla, Alabama.

8.     On or about November 8, 2000, Defendant YESSICK made an offer to buy a parcel of land in McCalla, Alabama, for $40,000.

9.     On or about November 27, 2000, Defendant YESSICK signed a contract to buy the land in McCalla, Alabama, for $47,500, while concealing that the land was actually to be purchased for the benefit of Defendant BARBER.

10.    On or about November 30, 2000, Defendant YESSICK caused an agent for Defendant PUGH, INC. to sign an earnest money check for $1,000 on the land in McCalla, Alabama, for the benefit of Defendant BARBER.

11.    On or about December 15, 2000, Defendant YESSICK informed the realtor that the McCalla land actually would be purchased for Defendant BARBER and not Defendant PUGH, INC., as indicated earlier.

12.    On or about December 15, 2000, Defendant YESSICK caused the realtor to remove the name of Defendant PUGH, INC. from the papers on the McCalla land transaction and to change it to Defendant BARBER'S name.

13.    On or about December 15, 2000, Defendant ROLAND PUGH and Defendant YESSICK caused Defendant PUGH, INC. to pay to the closing attorney for the McCalla land $46,877, for the benefit of Defendant BARBER.

14.    On or about December 18, 2000, Defendant BARBER signed an "Unimproved Land Sales Contract," falsely dated November 21, 2000, for the purpose of concealing the identity of Defendant PUGH, INC. as the source of payment for the McCalla land.

15.    On or about December 18, 2000, Defendant BARBER signed the closing documents on the McCalla land.

16.     On or about December 19, 2000, Defendant YESSICK signed a false and fraudulent

        contract to buy a house from the realtor, for purposes of concealing the identity of

        Defendant PUGH, INC. as the source of payment of the $1,000 in earnest money paid on

        November 30, 2000, that really was for the benefit of Defendant BARBER.

17.     On or about December 19, 2000, Defendant YESSICK, for purposes of concealing the

        identity of Defendant PUGH, INC. as the source of payment of the $1,000 earnest money

        paid on November 30, 2000, caused the realtor to refund the $1,000 PUGH, INC. paid on

        the McCalla land.

18.     On or about December 19, 2000, Defendant YESSICK caused an agent of Defendant

        PUGH, INC. to pay $1,050 for a portion of the purchase price on the McCalla land, for the

        benefit of Defendant BARBER.

19.     During December 2000, the exact dates being unknown to the Grand Jury, in an effort to

        conceal the scheme regarding the McCalla land, Defendant YESSICK caused an agent of

        Defendant PUGH, INC. to charge $47,927 worth of expenses involved in the purchase of

        the McCalla land as expenses to the  "Paradise Lake" job, a no-bid project the JCESD

        previously had awarded to Defendant PUGH, INC.

20.     On or about January 5, 2001, Defendant BARBER delivered the $1050 check, issued by

        Defendant PUGH, INC. in Paragraph 18 of this Count, to the office of the closing attorney

        on the McCalla land and received the deed to the property.

21.     On or about September 13, 2001, Defendant YESSICK caused an agent of Defendant

        PUGH, INC. to reserve a condominium at the Phoenix III in Baldwin County, Alabama,

        for the benefit of Defendant BARBER, by charging $481 to a credit card of PUGH, INC.

22.    On or about September 14, 2001, Defendant YESSICK caused an agent of Defendant

PUGH, INC. to reserve a hotel room at the Beau Rivage Resort and Casino in Biloxi,

Mississippi, for the benefit of Defendant BARBER, by charging $546 to a credit card of

Defendant PUGH, INC.

23.    In or about September 2001, the exact dates being unknown to the Grand Jury, Defendant

YESSICK caused an agent of Defendant PUGH, INC. to reserve a room at the Isle of

Capri Casino in Vicksburg, Mississippi, for the benefit of Defendant BARBER, by

charging $148 to a credit card of Defendant PUGH, INC.

24.    Between September 30 and October 3, 2001, Defendant BARBER stayed at the Isle of

Capri Casino in Vicksburg, Mississippi, in a room paid for by Defendant PUGH, INC.

25.    Between October 3 and 6, 2001, Defendant BARBER stayed at Beau Rivage Resort and

Casino in Biloxi, Mississippi, in a room paid for by Defendant PUGH, INC.

26.    Between October 6 and 11, 2001, Defendant BARBER stayed at Phoenix III

Condominiums in Gulf Shores, Alabama, in a unit paid for by Defendant PUGH, INC.

27.    In an effort to conceal receipt of the $47,927 bribe from Defendant PUGH, INC. on the

McCalla land, Defendant BARBER made, and Defendant YESSICK accepted, a series of

bogus "loan repayment" checks to PUGH, INC. on the following dates and amounts:

–3/14/03        $8,000;

–3/24/03        $8,000;

–4/20/03        $8,000;

–4/23/03        $8,000;

–5/03/03        $8,000; and

–5/6/03         $6,877.

**All in violation of Title 18 United States Code, Section 371.**

## COUNT SEVENTY-NINE to EIGHTY-TWO

### (18 U.S.C. § 666 – Bribery)

1.    The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.    CLARENCE R. BARBER is named as DEFENDANT in this Count.

3.    From about December 2000 to December 2001, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendant CLARENCE R. BARBER being an agent of the county government, which county government received federal assistance in excess of $10,000 in a one-year period, did corruptly solicit and demand for the benefit of any person, and accept and agree to accept, anything of value from any person, intending to be influenced and rewarded in connection with any business, transaction, and series of transactions of such government involving anything of value of $5,000 or more, to wit: Defendant BARBER, being an employee of Jefferson County, corruptly solicited, accepted, and agreed to accept from Grady R. "Roland" Pugh, Joseph E. "Eddie Yessick, and Roland Pugh Construction, Inc.:

**Count 79:**  Real property in McCalla, Alabama, with a value of $47,927;

**County 80:**  A trip to Isle of Capri Casino in Vicksburg, Mississippi, with a value of $148;

**Count 81:**  A trip to Beau Rivage Resort and Casino in Biloxi, Mississippi, with a value of $546; and

**Count 82:**   A trip to Phoenix III Condominiums in Gulf Shores, Alabama, with a value of $481;

in each instance intending to be influenced and rewarded in connection with the JCESD sewer construction contracting program.

**Each Count in Violation of Title 18 United States Code, Section 666(a)(1)(B).**


## COUNT EIGHTY-THREE to EIGHTY-SIX

### (18 U.S.C. § 666 – Bribery)

1.      The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.      GRADY R. "ROLAND" PUGH; JOSEPH E. "EDDIE" YESSICK;  and ROLAND PUGH CONSTRUCTION, INC. ("PUGH, INC.") are hereby named as DEFENDANTS in this count.

3.      From at least December 2000 and continuing at least through December 2001, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendants ROLAND PUGH, YESSICK, and PUGH, INC., aided and abetted by each other, did corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of county government, which county government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, or series of transactions of such county government involving anything of value of $5,000 or more, to wit: Defendants YESSICK and PUGH, INC. corruptly offered, gave, and agreed to give to Clarence Barber, an agent of Jefferson County:

65

**Count 83:**  Real property in McCalla, Alabama, with a value of $47,927;

**Count 84:**  A trip to Isle of Capri Casino in Vicksburg, Mississippi, with a value of $148;

**Count 85:**  A trip to Beau Rivage Resort and Casino in Biloxi, Mississippi, with a value of $546; and

**Count 86:**  A trip to Phoenix III Condominiums in Gulf Shores, Alabama, with a value of $481,

in each instance intending to influence and reward Clarence Barber and to be rewarded in connection with the JCESD sewer construction contracting program.

**Each Count in violation of Title 18 United States Code, Sections 666(a)(2) and 2.**

### COUNT EIGHTY-SEVEN

### (18 U.S.C. § 666 – Bribery)

1.    The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.    BOBBY J. RAST, and RAST CONSTRUCTION, INC. ("RAST, INC.") are named as DEFENDANTS in this Count.

3.    In May 2002, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendants BOBBY RAST and RAST, INC. aided and abetted by each other, did corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of the county government, which county government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, or series of transactions of such government involving anything of value of $5,000 or more, to wit: Defendants BOBBY RAST and

66

RAST, INC. corruptly offered, gave, and agreed to give $1,000 cash to Donald R. Ellis, an engineer with the JCESD, intending to influence and reward him in connection with the JCESD sewer construction contracting program.

**All in violation of Title 18 United States Code, Sections 666(a)(2) and 2.**


## COUNT EIGHTY-EIGHT

### (18 U.S.C. § 666 – Bribery)

1.     The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.     EDWARD T. KEY, Jr., and US INFRASTRUCTURE, INC. ("USI") are named as DEFENDANTS in this Count.

3.     On or about May 2002, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendants EDWARD T. KEY, Jr., and USI, aided and abetted by each other, did corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of county government, which county government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, or series of transactions of such government involving anything of value of $5,000 or more, to wit: Defendants EDWARD T. KEY, Jr., and USI corruptly offered, gave, and agreed to give an envelope containing $500 in cash to Donald R. Ellis, an employee of Jefferson County, intending to influence and reward him and to be rewarded in connection with the JCESD sewer construction contracting program.

**All in violation of Title 18 United States Code, Sections 666(a)(2) and 2.**

## COUNT EIGHTY-NINE

### (18 U.S.C. § 666 and 2 – Bribery)

1.    The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.    Defendants DANIEL B. "DANNY" RAST and RAST CONSTRUCTION, INC. ("RAST, INC.") are named as DEFENDANTS in this Count.

3.    On or about December 2000, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendants DANIEL B. "DANNY" RAST and RAST CONSTRUCTION, INC. ("RAST, INC."), aided and abetted by each other, did corruptly give, offer, and agree to give anything of value to any person, with intent to influence and reward an agent of the county government, which county government received federal assistance in excess of $10,000 in a one-year period, in connection with any business, transaction, or series of transactions of such government involving anything of value of $5,000 or more, to wit: Defendants DANNY RAST and RAST, INC. corruptly offered, gave, and agreed to give an envelope containing $1,000 cash, to Larry P. Creel, an employee of the JCESD, intending to influence and reward him in connection with the JCESD sewer construction contracting program and Product Review Committee.

**All in violation of Title 18 United States Code, Section 666(a)(2) and 2.**

### COUNTS NINETY to ONE HUNDRED-ONE

### (18 U.S.C. Sections 1341, 1346 Honest Services Mail Fraud)

1.    The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

68

2.      JACK W. SWANN; JOSEPH E. "EDDIE" YESSICK; and ROLAND PUGH

CONSTRUCTION, INC. ("PUGH, INC.") are hereby named as defendants in these

counts, as listed below.

<u>The Duty of Honest Services</u>

3.      A public employee, such as an employee of the JCESD, is prohibited from soliciting or

receiving a thing of value for himself or a family member for the purpose of influencing

official action by the public employee.

4.      No one can offer or give a thing of value to a public employee, such as an employee of the

JCESD, or to a family member of the public employee for the purpose of influencing

official action by the public employee.

<u>The Scheme</u>

5.      From in or about March 2000 and continuing at least through December 2002, in the

Northern District of Alabama and elsewhere, Defendants SWANN, YESSICK, and

PUGH, INC., and others known and unknown to the Grand Jury, devised and intended to

devise a scheme and artifice to defraud and deprive the State of Alabama and Jefferson

County of their right to Defendant SWANN's honest services as an employee of the

JCESD, performed free from deceit, fraud, dishonesty, favoritism, self-enrichment, and

self dealing.

<u>Manner and Means of the Scheme with SWANN</u>

6.      It was part of the scheme that Defendant SWANN, while he was the Director of the

JCESD, would and did solicit and accept, as indicated below: landscaping with an

69

approximate value of $140,000 from Defendants YESSICK and PUGH, INC., a contractor that performed work for the JCESD.

Execution of the Scheme

7.      As indicated in the list below, in the Northern District of Alabama and elsewhere, Defendants SWANN, YESSICK, and PUGH, INC., and others known and unknown, for the purpose of executing and attempting to execute this scheme and artifice to defraud, knowingly caused envelopes containing the checks listed below to be placed in an office of the U.S. Postal Service, and sent from PUGH, INC., 1280 Powder Plant Road, Bessemer, AL 35022 addressed to Guthrie Landscaping, P.O. Box 405, Northport, AL 35746, to be sent and delivered by the U.S. Postal Service:

**Count 90:**      Guthrie Landscaping check dated 12/13/00 for $15,635;

**Count 91:**      Guthrie Landscaping check dated 1/16/01 for $10,437;

**Count 92:**      Guthrie Landscaping check dated 2/15/01 for $33,622;

**Count 93:**      Guthrie Landscaping check dated 3/13/01 for $15,201;

**Count 94:**      Guthrie Landscaping check dated 4/12/01 for $5,686;

**Count 95:**      Guthrie Landscaping check dated 7/16/01 for $603;

**Count 96:**      Guthrie Landscaping check dated 8/14/01 for $1,207;

**Count 97:**      Guthrie Landscaping check dated 9/14/01 for $6,835;

**Count 98:**      Guthrie Landscaping check dated 10/16/01 for $2,040;

**Count 99:**      Guthrie Landscaping check dated 11/16/01 for $1,207;

**Count 100:**      Guthrie Landscaping check dated 12/18/01 for $1,207; and

**Count 101:**      Guthrie Landscaping check dated 1/16/02 for $47,000;

**All in violation of Title 18 United States Code, Sections 1341, 1346, and 2.**

**COUNTS ONE HUNDRED-TWO to ONE HUNDRED TWENTY-ONE**

**(18 U.S.C. SECTION 1341, 1346 Honest Services Mail Fraud)**

1.      The allegations in the first twenty-eight paragraphs of this Indictment are realleged and

incorporated herein.

2.      JACK W. SWANN; RONALD K. WILSON; CIVIL ENGINEERING DESIGN

SERVICES, INC. ("CEDS, INC."); PAT DOUGHERTY; and F.W. DOUGHERTY

ENGINEERING & ASSOCIATES, INC. ("FWDE, INC."), are hereby named as

DEFENDANTS in these counts, as listed below.

<u>The Duty of Honest Services</u>

3.      A public employee, such as an employee of the JCESD, is prohibited from soliciting or

receiving a thing of value for himself or a family member for the purpose of influencing

official action by the public employee.

4.      A public employee, such as an employee of the JCESD, is prohibited from having a

financial interest in a matter that relates to the discharge of his official duties.

5.      A public employee, such as an employee of the JCESD, is prohibited from using his

official position to obtain personal gain for himself or any business with which he is

associated.

6.      A public employee, such as an employee of the JCESD who participates in the negotiation

or approval of contracts, is prohibited from receiving a contract with his former employer

for a period of two years after he leaves that department or agency.

7.     A public employee, such as an employee of the JCESD, is prohibited from doing business with his former employer for a period of two (2) years after he leaves his county job.

<u>The Scheme</u>

8.     From in or about September 1999 and continuing at least through August 2002, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendants SWANN; WILSON; CEDS, INC.; DOUGHERTY; FWDE, INC.; and others known and unknown to the Grand Jury, devised and intended to devise a scheme and artifice to defraud and deprive the State of Alabama and Jefferson County of their right to Defendant WILSON's honest services as an employee of Jefferson County, performed free from deceit, fraud, dishonesty, favoritism, self-enrichment, and self dealing.

<u>Manner and Means of the Scheme</u>

9.     It was part of the scheme that Defendant SWANN, combined, conspired and agreed to award two "no bid" JCESD engineering contracts worth $483,000 and $350,000 to Defendant RONALD K. WILSON, doing business as CEDS, INC., while Defendant WILSON was still an employee of the JCESD.

10.    It was part of the scheme that Defendants WILSON; CEDS, INC.; SWANN; DOUGHERTY; and FWDE, INC., combined and conspired with themselves and others known and unknown to the Grand Jury, to have the JCESD award the Tarrant Springs Branch Trunk Sewer Replacement contract and the Hopewell Pumping Station Design contract to WILSON.  Jefferson County employed Defendant WILSON to work as its engineer on the Tarrant Springs Branch Trunk Sewer Replacement and the Hopewell Pumping Station projects until November 5, 1999.

11.     It was part of the scheme that Defendant FLOYD W. "PAT" DOUGHERTY and FWDE,

        INC. combined, conspired and agreed with SWANN and WILSON to accept award of the

        Tarrant Springs Branch Trunk Sewer Replacement and Hopewell Pumping Station Design

        contracts, in the name of Defendant FWDE, INC., knowing that in reality that Defendant

        WILSON, then the Chief Engineer of the JCESD, would actually be performing those

        contracts, doing business as CEDS, INC., beginning in the fall of 1999.


                                    Execution of the Scheme

12.     As indicated in the list below, in the Northern District of Alabama and elsewhere,

        Defendants SWANN; WILSON; CEDS, INC.; DOUGHERTY; FWDE, INC.; and others

        known and unknown to the Grand Jury, for the purpose of executing and attempting to

        execute the scheme and artifice to defraud, knowingly caused envelopes containing the

        invoices listed below, totaling approximately $495,000, to be placed in an office of the

        U.S. Postal Service, addressed:

        FROM:  FW Dougherty Engineering & Associates, Inc., 2441 Old Springville Road,

        Birmingham, AL 35125-4053;

        TO:  Jack W. Swann, Director of Environmental Services, Jefferson County

        Environmental Services Department, Room B-202, Courthouse, Birmingham, AL  35263,

        which were sent and delivered by the U.S. Postal Service:


| OVERT ACT | DATE | MAIL MATTER SENT |
| --- | --- | --- |
| 13. | 11/16/99 | $45,885 Invoice on Tarrant Springs |
| 14. | 12/20/99 | $22,942 Invoice on Tarrant Springs |

73

| 15. | 1/19/00 | $22,942 Invoice on Tarrant Springs |
| 16. | 2/15/00 | $22,942 Invoice on Tarrant Springs |
|  | 2/15/00 | $49,875 Invoice on Hopewell Pump Station |
| 17. | 3/16/00 | $22,942 Invoice on Tarrant Springs |
|  | 3/16/00 | $19,950 Invoice on Hopewell Pump Station |
| 18. | 4/17/00 | $22,942 Invoice on Tarrant Springs |
|  | 4/17/00 | $19,950 Invoice on Hopewell Pump Station |
| 19. | 5/15/00 | $45,885 Invoice on Tarrant Springs |
|  | 5/15/00 | $19,950 Invoice on Hopewell Pump Station |
| 20. | 6/19/00 | $36,708 Invoice on Tarrant Springs |
|  | 6/19/00 | $19,950 Invoice on Hopewell Pump Station |
| 21. | 7/19/00 | $32,119 Invoice on Tarrant Springs |
|  | 7/19/00 | $29,925 Invoice on Hopewell Pump Station |
| 22. | 8/15/00 | $34,413 Invoice on Tarrant Springs |
|  | 8/15/00 | $26,600 Invoice on Hopewell Pump Station |

| **COUNTS** | **DATE** | **MAIL MATTER SENT** |
| --- | --- | --- |
| **Count 102:** | 9/19/00 | $16,059 Invoice on Tarrant Springs |
|  | 9/19/00 | $19,950 Invoice on Hopewell Pump Station |
| **Count 103:** | 10/17/00 | $18,354 Invoice on Tarrant Springs |
|  | 10/17/00 | $16,625 Invoice on Hopewell Pump Station |
| **Count 104**: | 12/12/00 | $13,765 Invoice on Tarrant Springs |
| **Count 105:** | 12/20/00 | $9,975 Invoice on Hopewell Pump Station |

74

**Count 106:**     1/03/01     $32,119 Invoice on Tarrant Springs

                         1/03/01     $16,625 Invoice on Hopewell Pump Station

**Count 107:**     2/05/01     $34,125 Invoice on Hopewell Pump Station

**Count 108:**     2/15/01     $22,942 Invoice on Tarrant Springs

**Count 109:**     4/02/01     $14,962 Invoice on Hopewell Pump Station

**Count 110:**     4/26/01     $22,942 Invoice on Tarrant Springs

                         4/26/01     $18,287 Invoice on Hopewell Pump Station

**Count 111:**     6/19/01     $40,350 Invoice on Tarrant Springs

**Count 112:**     7/19/01     $7,594 Invoice on Tarrant Springs

                         7/19/01     $52,210 Invoice on Hopewell Pump Station

**Count 113:**     8/20/01     $6,813 Invoice on Tarrant Springs

                         8/20/01     $17,936 Invoice on Hopewell Pump Station

**Count 114:**     9/20/01     $4,900 Invoice on Tarrant Springs

                         9/20/01     $8,582 Invoice on Hopewell Pump Station

**Count 115:**     10/23/01     $8,750 Invoice on Tarrant Springs

                         10/23/01     $8,700 Invoice on Hopewell Pump Station

**Count 116:**     11/27/01     $8,750 Invoice on Tarrant Springs

                         11/27/01     $8,700 Invoice on Hopewell Pump Station

**Count 117:**     12/31/01     $8,700 Invoice on Hopewell Pump Station

**Count 118:**     1/30/02     $8,750 Invoice on Tarrant Springs

                         1/30/02     $8,700 Invoice on Hopewell Pump Station

**Count 119:**     2/22/02     $4,375 Invoice on Tarrant Springs

                         2/22/02     $4,350 Invoice on Hopewell Pump Station

| **Count 120:** | 5/20/02 | $16,154 Invoice on Tarrant Springs |
| **Count 121:** | 8/23/02 | $16,154 Invoice on Tarrant Springs |

**Each Count in Violation of Title 18 United States Code, Sections 1341, 1346, and 2.**

**COUNTS ONE HUNDRED TWENTY-TWO to ONE HUNDRED TWENTY-FOUR**

**(18 U.S.C. Sections 1341 Mail Fraud)**

1.      The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.      FLOYD W. "PAT" DOUGHERTY and F.W. DOUGHERTY ENGINEERING & ASSOCIATES, INC. ("FWDE, INC.") are hereby named as defendants in these counts, as listed below.

<u>The Scheme</u>

3.      From at least April 2000 and continuing at least through December 2000, the exact dates being unknown to the Grand Jury, in the Northern District of Alabama and elsewhere, Defendants DOUGHERTY and FWDE, INC., and others known and unknown to the Grand Jury, devised and intended to devise a scheme to defraud Jefferson County and the JCESD of its money by charging the JCESD (through the Valley Creek WWTP Improvements Project), for the payroll expense of Bill Bailey who was actually working at the McNair Studio job as a bribe to Chris McNair, as charged in Count 1.

<u>Execution of the Scheme</u>

4.      As indicated in the list below, in the Northern District of Alabama and elsewhere, Defendants DOUGHERTY and FWDE, INC., and others known and unknown, for the

purpose of executing and attempting to execute this scheme and artifice to defraud, knowingly caused envelopes containing the invoices listed below to be placed in an office of the U.S. Postal Service, and sent from:  FWDE, INC., 2441 Old Springville Road, Birmingham, AL 35215; and addressed to:  Jack Swann, Director of Environmental Services, JCESD, Courthouse Room B-202, Birmingham, AL 35263; to be sent and delivered by the U.S. Postal Service:

| | | |
|---|---|---|
| Overt act | 4/17/00 | Invoice 1, $59,401 |
| Overt act | 5/15/00 | Invoice 2, $62,904 |
| Overt act | 6/19/00 | Invoice 3, $108,963 |
| Overt act | 7/19/00 | Invoice 4, $86,075 |
| Overt act | 8/15/00 | Invoice 5, $94,084 |
| **Count 122:** | 9/19/00 | Invoice 6, $124,819 |
| **Count 123:** | 10/17/00 | Invoice 7, $117,433 |
| **Count 124:** | 12/12/00 | Invoice 8, $67,996 |

**All in Violation of Title 18 United States Code, Sections 1341 and 2.**

## COUNT ONE HUNDRED TWENTY-FIVE

### (18 U.S.C. § 1503 - Obstruction)

1.     The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.     ROLAND PUGH CONSTRUCTION, INC. ("PUGH, INC.") is hereby named as the DEFENDANT in this count.

3.    From on or about January 2003 and continuing until the date of Indictment, in the Northern District of Alabama and elsewhere, Defendant PUGH, INC. did corruptly obstruct and impede an official proceeding, specifically Grand Juries empaneled on September 18, 2002, and September 22, 2004 sitting in the Northern District of Alabama which were investigating allegations of corruption, fraud, bid rigging, and other violations of federal law.

4.    The defendant obstructed justice by, among other things, intentionally withholding and destroying the following documents:  George Word invoices for $34,150 and $10,042 that were paid for the benefit of Chris McNair; Guthrie Landscaping invoices for a total of $140,680 and Aquatic Gardens invoices paid for the benefit of Jack W. Swann; and documents relating to the McCalla land for $47,927 paid for the benefit of Clarence R. Barber, that the Grand Juries had subpoenaed and that were material to the investigations; thereby obstructing or impeding the Grand Jury's Investigation.

**All in violation of Title 18 United States Code, Section 1503.**

## COUNT ONE HUNDRED TWENTY-SIX

### (18 U.S.C. § 1503 - Obstruction)

1.    The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.    BOBBY J. RAST and RAST CONSTRUCTION, INC. are hereby named as DEFENDANTS in this count.

3.    From on or about June 2003 and continuing until the date of Indictment, in the Northern District of Alabama and elsewhere, Defendants BOBBY RAST and RAST, INC. did corruptly obstruct and impede an official proceeding, specifically Grand Juries empaneled

78

on September 18, 2002 and September 22, 2004 sitting in the Northern District of Alabama which were investigating allegations of corruption, fraud, bid rigging, and other violations of federal law.

4.      The defendants obstructed justice by, among other things, intentionally withholding invoices, payment documents, and other records relating to: Sherman Concrete, J & J Construction Supply, Inc., and Ram Tool Supply, Inc. for things that were paid for as bribes to influence and reward Jewell C. "Chris" McNair; price quotes to or from Roland Pugh Construction, Inc. that related to the Sherman Act investigation; and by providing a false affidavit of compliance with grand jury subpoena to the Grand Juries in the Northern District of Alabama. These omissions and false statements were material to the investigations, and thereby obstructed and impeded the Grand Jury's Investigation.

**All in violation of Title 18 United States Code, Section 1503.**

## COUNT ONE HUNDRED TWENTY-SEVEN

### (18 U.S.C. § 1503 - Obstruction)

1.      The allegations in the first twenty-eight paragraphs of this Indictment are realleged and incorporated herein.

2.      SOHAN P. SINGH, EDWARD T. KEY, Jr., and US INFRASTRUCTURE, INC. ("USI") are hereby named as DEFENDANTS in this count.

3.      From on or about September 2004 and continuing until the date of Indictment, in the Northern District of Alabama and elsewhere, Defendants SINGH, KEY and USI did corruptly obstruct and impede an official proceeding, specifically the Grand Jury empaneled on September 22, 2004, sitting in the Northern District of Alabama which were

investigating allegations of corruption, fraud, bid rigging, and other violations of federal law.

4.      Defendants SINGH, KEY, and USI obstructed justice by, among other things, intentionally withholding the following:  documents relating to cash payments made as bribes to employees of Jefferson County, documents relating to gift cards given as bribes to employees of Jefferson County; and by providing a false letter of compliance with the grand jury subpoena to the Grand Jury empaneled in the Northern District of Alabama. These omissions and misrepresentations were material to the investigations, and thereby obstructed and impeded the Grand Jury's Investigation.

**All in violation of Title 18 United States Code, Section 1503.**


TRUE BILL
      /s/
_____
GRAND JURY FOREMAN                              ALICE H. MARTIN
                                                UNITED STATES ATTORNEY


                                        ____/s/_____
                                        WILLIAM D. DILLON
                                        TRIAL ATTORNEY